**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 97-40619

_____


WILLIAM REED HUCKABAY,

                              Plaintiff-Appellant,

VERSUS

EDWARD MOORE,
Individually and in His Official Capacity
as County Commissioner,
and
JEFFERSON COUNTY, TEXAS,

                              Defendants-Appellees.

_____

Appeal from the United States District Court
for the Eastern District of Texas
_____

May 22, 1998


ON PETITION FOR REHEARING


Before POLITZ, Chief Judge, SMITH and DUHÉ, Circuit Judges.

JERRY E. SMITH, Circuit Judge:


   The petition for rehearing is DENIED.  This court's opinion,
137 F.3d 871 (5th Cir. 1998), is hereby withdrawn, and the
following opinion is substituted:


                          I.

William Huckabay, who is white, has worked as an employee of

Jefferson County Precinct Four since 1976. Edward Moore, who is black, was elected Commissioner of Precinct Four in 1987. Huckabay alleges that upon his election, Moore immediately set out on a deliberate and overt program to make his precinct a "black precinct." According to Huckabay, Moore stated that "blacks had suffered for two hundred years, and now it was the whites' turn," and Moore acted upon that theory.

Again according to Huckabay, Moore instituted generally racist employment practices in an attempt to force out his white employees. Moore demoted white supervisors of many years' experience, replacing them withSSand forcing them to work underSSblacks of lesser experience and training. He assigned whites to the most burdensome and disliked tasks, while excusing blacks. He refused to allow whites who had been injured on the job to perform "light duty"SSas he did for blacksSSbut insisted that they perform heavy duty or stay home. He allowed black employees to take frequent breaks on the job, but chastised whites who did the same. During his tenure as commissioner, Moore hired twenty-two black employees and only one white. And on the job, Moore tolerated and helped to foster an atmosphere in which whites were called "honkeys" and were made the subject of ridicule and harassment on account of race.

Huckabay claims that, in addition to suffering this generalized discrimination, he has incurred specific instances of particularized discrimination. He was demoted, and his pay was cut, from mechanic to laborer when he broke his arm and had to take

2

time off from work.  He is no longer allowed to run any equipment. When a supervisory job opened up, he was not even considered for it, despite his fairly long experience with the county.[1]  And in a multitude of ways, he is forced to tolerate verbal and nonverbal racial harassment as a condition of his employment.

On May 26, 1995, Huckabay filed a charge of discrimination with the EEOC, alleging a hostile work environment.  He received a right-to-sue letter and filed this suit, alleging violations of 42 U.S.C. §§ 1981, 1983, and 2000e, as well as Texas tort and state constitutional claims.  The district court granted summary judgment in favor of Moore and the county.  On appeal, Huckabay challenges the summary judgment as to his title VII claim and his state tort and constitutional claims, but he abandons his claims under §§ 1981 and 1983.[2]

## II.

We review a summary judgment *de novo*.  *See Hanks v. Transcontinental Gas Pipe Line Corp.*, 953 F.2d 996, 997 (5th Cir. 1992).  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine

---

[1] Both the demotion and failure to promote occurred more than 300 days before Huckabay filed his charge with the EEOC.

[2] Huckabay challenges the judgment with regard to title VII on both the limitations and evidentiary issues.  Nowhere, though, does he mention the court's disposition of his §§ 1981 and 1983 claims.  Although we may liberally construe briefs to determine what issues are presented, issues not raised at all are considered abandoned.  *See, e.g., SEC v. Recile*, 10 F.3d 1093, 1096 (5th Cir. 1993).

issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the non-moving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue for trial. *See Hanks*, 953 F.2d at 997.

We begin our determination by consulting the applicable substantive law to determine what facts and issues are material. *See King v. Chide*, 974 F.2d 653, 655-56 (5th Cir. 1992). We then review the evidence relating to those issues, viewing the facts and inferences in the light most favorable to the non-movant. *See id.* If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *See Brothers v. Klevenhagen*, 28 F.3d 452, 455 (5th Cir. 1994).


### III.
#### A.

In a state that, like Texas, provides a state or local administrative mechanism to address complaints of employment discrimination, a title VII plaintiff must file a charge of discrimination with the EEOC within 300 days after learning of the conduct alleged. 42 U.S.C. § 2000e-5(e)(1); *see also Messer v. Meno*, 130 F.3d 130, 134 & n.2 (5th Cir. 1997). Huckabay did not file with the EEOC within 300 days of much of the discriminatory

4

conduct he alleges, but he claims that under the "continuing violation doctrine," recognized by this court in *Berry v. Board of Supervisors*, 715 F.2d 971 (5th Cir. 1983), his claims are timely, nonetheless.

As we explained in *Messer*,

> The continuing violation theory relieves a plaintiff of establishing that all of the complained-of conduct occurred within the actionable period if the plaintiff can show a series of related acts, one or more of which falls within the limitations period. . . . The core idea of the continuing violations theory, however, is that equitable considerations may very well require that the filing periods not begin to run until facts supportive of a Title VII charge or civil rights action are or should be apparent to a reasonably prudent person similarly situated. The focus is on what event, in fairness and logic, should have alerted the average lay person to act to protect his rights. At the same time, the mere perpetuation of the effects of time-barred discrimination does not constitute a violation of Title VII in the absence of independent actionable conduct occurring within the statutory period. Thus, a plaintiff can avoid a limitations bar for an event that fails to fall within the statutory period where there is a persisting and continuing system of discriminatory practices in promotion or transfer that produces effects that may not manifest themselves as individually discriminatory except in cumulation over a period of time.

130 F.3d at 134-35 (citations, quotation marks, and brackets omitted). Although there is no definitive standard for what constitutes a continuing violation, the plaintiff must demonstrate more than a series of discriminatory acts. He must show an organized scheme leading to and including a present violation, *see Berry*, 715 F.2d at 981, such that it is the cumulative effect of the discriminatory practice, rather than any discrete occurrence, that gives rise to the cause of action, *see Messer*, 130 F.3d at 135; *Glass*, 757 F.2d 1561.

5

This inquiry may involve several factors, including the following three:

> The first is subject matter. Do the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation? The second is frequency. Are the alleged acts recurring . . .[3] or more in the nature of an isolated work assignment or employment decision? The third factor, perhaps of most importance, is degree of permanence. Does the act have the degree of permanence which should trigger an employee's awareness of and duty to assert his or her rights, or which should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected without being dependent on a continuing intent to discriminate?

*Berry*, 715 F.2d at 981. Importantly, however, the particular context of individual employment situations requires a fact-specific inquiry that cannot easily be reduced to a formula. *Id.*

B.

Huckabay's specific allegations are that he was unlawfully demoted because of his race, that he was kept from promotion because of his race, and that he was forced to endure a racially hostile work environment as a condition of his employment. Moore argues that the continuing violation doctrine may apply only, if at all, to the hostile environment claim, rather than to the specific instances of demotion and failure to promote.[4] We agree.

---

[3] *Berry* gives the example of a bi-weekly paycheck as "recurring" acts, but we specifically have held that the mere receipt of a paycheck does not constitute a "continuing act" of discrimination. *See Hendrix*, 911 F.2d at 1104.

[4] Moore also argues that Huckabay failed to raise the doctrine in the trial
(continued...)

6

There is little question that Huckabay's hostile environment claim is subject to the continuing violation doctrine. The ongoing racial harassment suffered by Huckabay was all of the same sort, it was continual, and it was a permanent condition of his workplace. *Cf*. *Berry*, 715 F.2d at 981. And the pattern of harassment was not the kind of violation thatSSlike a discrete instance of discriminatory conductSSwould put a worker on notice that his rights had been violated. *Id*. While we need not decide whether every hostile environment would necessarily be a continuing violation, *cf., e.g., Gipson v. KAS Snacktime Co.*, 83 F.3d 225, 229 (8th Cir. 1996), we conclude that the hostile environment faced by Huckabay was.

That Huckabay was subjected to this continuing violation does not, however, necessarily make timely all his allegations of discriminatory conduct. Where it is applicable, the continuing violation doctrine applies to excuse the 300-day exhaustion requirement only as to the course of conduct that constitutes that violation. We therefore must consider whether all the conduct alleged by HuckabaySSthe hostile environment, the demotion, and the failure to promoteSSmay be considered part of the same continuing course of conduct. This, in turn, will depend on the basic test for what conduct will constitute a continuing violation, as

---

(...continued)
court with respect to the promotion and demotion claims, and that he thus waived it. This argument rises or falls on the basic applicability of the theory to any given conduct, for if a course of conduct is a single cause of action, there is no need to raise arguments with respect to every instance of conduct within the continuing violation that gives rise to that cause.

articulated in *Berry* and other cases.

Huckabay's demotion is a different sort of discrimination from the day-to-day harassment that makes his workplace a hostile environment. Moreover, he was demoted only once, and unlike the cumulative effect of the petty annoyances of daily harassment, demotion is the sort of discrete and salient event that should put an employee on notice that a cause of action has accrued. It does not constitute a part of the same pattern of behavior that amounts to a continuous violation by rendering Huckabay's workplace a hostile environment.

Similarly, Moore's failure to promote Huckabay is an isolated occurrence apart from the continuously violative hostile environment. These discrete adverse actions, though racially motivated, cannot be lumped together with the day-to-day pattern of racial harassment, for they were isolated occurrences that should have put Huckabay on notice that a claim had accrued. Therefore, because these otherwise untimely claims are not continuing violations, Huckabay cannot recover for his demotion or failure to be promoted.

The remaining question with regard to the continuing violation doctrine is whether Huckabay can point to any violation within the 300-day period. The doctrine will render a complaint timely as to a course of conduct only if the complaint is timely as to the most recent occurrence. *See Coon v. Georgia Pac. Corp.*, 829 F.2d 1563, 1570 (5th Cir. 1987).

The district court stated that Huckabay's continuing violation

8

theory must fail, because he had offered no "specific evidence" of conduct within the 300-day window. It is true that a plaintiff may not survive summary judgment with conclusory statements that discrimination is "ongoing." [5] And as always, the nonmoving party must set forth specific facts that support his case. *See, e.g., Hanks,* 953 F.2d at 997.

Here we have specific and uncontradicted facts. Huckabay's affidavit states, for example, "I am constantly ribbed and harassed [by coworkers] for being white." In his deposition, Huckabay again uses the present tense when he states that he endures "constant remarks" from his coworkers and that "[m]y wife says she can't talk to me for an hour when I come home to eat supper." The complaint states, "[a]s recently as December 18, 1996, Plaintiff was required by his African-American supervisor, Benjamin Okadigbo, to attend a meeting at the courthouse, which Black employees were not required to attend."[6] In the affidavit attached to his original EEOC charge of discriminationSSand also made part of the district court's recordSSHuckabay relates that he was "assigned to standing in the rain on May 8, 1995," while blacks were allowed to take shelter.

These specific facts, and others, support Huckabay's claim

---

[5] *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc) ("[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden.").

[6] The facts put forth in a verified complaint may be treated as if in an affidavit on summary judgment, if the asserted facts meet the requirements of FED. R. CIV. P. 56(e) that they be within the personal knowledge of the affiant, that they otherwise would be admissible into evidence, and that the affiant be competent to testify. *See Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.*, 831 F.2d 77, 80 (5th Cir. 1987); *Fowler v. Southern Tel. & Tel. Co.*, 343 F.2d 150, 154 (5th Cir. 1965).

that he worked in a hostile environment during the 300 days prior to his May 26, 1995, EEOC claim. Therefore, he may avail himself of the continuing violation doctrine as to his hostile environment claim.

## C.

The district court concluded that even if Huckabay's title VII claims are not time-barred, he would lose on the merits, for he had failed to make reference to the specific dates and times of alleged discrimination. This was error. Rather, the point of a hostile environment claim is that there is a continuous and ongoing pattern of harassment, rather than an incident, the occurrence of which can be precisely determined. *Cf., e.g., Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 66-67 (1986). While dates and times may lend credibility to the plaintiff's caseSSand their lack may seriously undermine itSSthey are not, as a matter of law, a prerequisite to recovery.[7]

Again, there is no doubt that vague or conclusory allegations of discrimination or harassment are not enough to survive summary judgment. *See Douglass,* 79 F.3d 1415, 1429. But that is not what we are presented with. Here, we have the affidavits of Huckabay and two of his co-workers in which they allege specific instances of discrimination, including those described above. The summary

---

[7] Nor does anything in the federal rules require more. In particular, FED. R. CIV. P. 9(f), which addresses the pleading of time and place, "does not require specificity in pleading time and place." 2 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 9.07[1], at 9-35 (3d ed. 1997).

judgment evidence that Huckabay presents is more than enough to allow his hostile environment claim to survive.

IV.

Huckabay named Moore a party in his official and individual capacities. In essence, he argues that the plenary authority wielded by county commissioners in Texas causes the individual commissioners to be "employers" for title VII purposes, and thus subject to liability.

A supervisor is considered an "employer" under title VII if he wields the employer's traditional rights, such as hiring and firing. *See Harvey v. Blake*, 913 F.2d 226, 227 (5th Cir. 1990). And a county commissioner such as Moore, who possesses almost total executive authority within his precinct as well as legislative authority as a member of the commissioners court, certainly wields sufficient authority to be considered an employer.

This power is necessarily exercised, however, by a person who acts as an agent of the corporate or municipal body he represents. Because the wrongful acts are performed in his official capacity, any recovery against that person must be against him in that capacity, not individually. *See id*. at 227-28; *see also Grant v. Lone Star Co.*, 21 F.3d 649, 651-53 (5th Cir. 1994) (private employer). Further, if Moore acted only in his *individual* capacity, he did not act as an "employer" and would not be liable under title VII to the extent that he acted individually. *See* 42 U.S.C. § 2000e-2 (1994); *Grant*, 21 F.3d at 653. Thus, a public

11

official cannot be held liable in his individual capacity for backpay damages under title VII. *See Clanton v. Orleans Parish Sch. Bd.*, 649 F.2d 1084, 1099 (5th Cir. Unit A July 1981).

Huckabay asserts that a recent amendment to 42 U.S.C. § 1981 extends liability to Moore in his individual capacity. Under the amended statute, 42 U.S.C. § 1981a(a)(1) (1994), in cases where liability under § 1981 is unavailable under title VII, defendants can be made liable for the same damages as would be available under § 1981SSnamely, compensatory and punitive damages. Thus, Huckabay argues that under this section, Moore should be personally liable for compensatory and punitive damages, for the cases foreclosing personal liability under title VII speak only to the availability of *backpay* awards from individual defendants. *Cf., e.g., Grant*, 21 F.3d at 651-53.

There is no merit to this argument. Section § 1981a does not create a new substantive right or cause of action. Rather, the plain language of the statute shows that it merely provides an additional remedy for "unlawful intentional discrimination . . . prohibited under . . . 42 U.S.C. § 2000e-2 or 2000e-3." 42 U.S.C. § 1981a(1)(1). Those sections of title VII, then, provide the underlying substantive right, a right that prohibits conduct only by "employers," "employment agencies," and "labor organizations." *See* 42 U.S.C. §§ 2000e-2, 2000e-3. Huckabay does not claim discrimination by either of the latter two, and our cases make plain that the term "employer" does not include a hiring or

12

supervisory official in his personal or individual capacity.[8]

V.

We agree with the district court that Huckabay's claim for intentional infliction of emotional distress cannot withstand summary judgment.  Texas law permits recovery under this theory only where the plaintiff's emotional distress is "severe."  *See Twyman v. Twyman*, 855 S.W.2d 619, 621-22 (Tex. 1993).  The severity of distress is not merely a matter of damages, it is an element of the cause of action.  *Hadley v. Vam PTS*, 44 F.3d 372, 375 (5th Cir. 1995).  "Severe" distress is that which no reasonable person could be expected to endure, *Behringer v. Behringer*, 884 S.W.2d 839, 844 (Tex. App.SSFort Worth 1994, writ denied), and must be more than mere worry, anxiety, vexation, embarrassment, or anger, *Regan v. Lee*, 879 S.W.2d 133, 136 (Tex. App.SSHouston [14th Dist.] 1994, no writ).  Huckabay has failed to adduce any summary judgment evidence that his distress was sufficiently severe, and his own deposition shows that it was not.

Huckabay's claim under the Texas Constitution also fails.  The Texas Supreme Court has specifically rejected the implication of a *Bivens*-type action for damages under the state constitution.[9]

---

[8] *See Grant*, 21 F.3d at 651; *Harvey*, 913 F.2d at 227.  *See also Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 588 n.2 (9th Cir. 1993) (rejecting argument that § 1981a altered title VII scheme to allow individual liability for compensatory and punitive damages).

[9] *See City of Beaumont v. Bouillon*, 896 S.W.2d 143, 149 (Tex. 1995). *Cf. Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

Rather, the only remedy afforded by that constitution is equitable relief from governmental actions taken in violation of its dictates. *Id*. On appeal, Huckabay claims that he desires equitable reliefSSnamely restoration to his previous position and pay level of mechanic, rather than laborer. While he may indeed desire such a result, his complaint requests only monetary compensation.[10] Huckabay's claim for monetary relief under the Texas Constitution is foreclosed as a matter of law.

## VI.

Huckabay has presented a title VII hostile environment claim with sufficient specificity to withstand summary judgment. Further, because the alleged hostile environment is a continuing violation, and because Huckabay has adduced summary judgment evidence of certain specific violations that took place within the 300-day statutory period, the claim is not time-barred. But we agree that summary judgment was proper as to all of Huckabay's other claims and that Moore may not be held liable in his

---

[10] Huckabay also claims that his complaint should be read as requesting backpay, and that backpay can be considered equitable relief under Texas law. He cites us to *City of Austin v. Gifford*, 824 S.W.2d 735 (Tex. App.SSAustin 1992, no writ), which involved a claim for backpay under the Texas Human Rights Act, which authorizes an "equitable award of back pay." TEX. LABOR CODE ANN. § 21.001–.306 (West 1996).

This does not mean that backpay awards are equitable relief in the sense that Huckabay suggests. The statute uses the term "equitable" to mean "fair and just"; it does not use the term to mean "not legal." *Cf. O'Bryant v. City of Midland*, 949 S.W.2d 406, 413-14 (Tex. App.SSAustin 1997, writ granted) ("officers' request for back pay for violations of their constitutional rights is essentially an action at law"). *See also, e.g.*, BLACK'S LAW DICTIONARY 537 (6th ed. 1990) ("equitable" defined in both senses). Suits for damages are, by their nature, suits at law, *see O'Bryant*, 949 S.W.2d at 413-14, and *Bouillon*, 896 S.W.2d at 149, made plain that the Texas Constitution does not give rise to such suits for monetary relief.

14

individual capacity.  We therefore REVERSE the summary judgment only with respect to the hostile environment claim, AFFIRM in all other respects, and REMAND for a trial on the merits.