IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 00-60658
Summary Calendar
_____


LINDA MCLENDON

                                        Plaintiff - Appellant

v.

INGALLS SHIPBUILDING INC

                                        Defendant - Appellee

_____

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:99-CV-181-GR
_____
May 31, 2001

Before KING, Chief Judge, and JONES and STEWART, Circuit Judges.

PER CURIAM:[*]

     In this employment sex discrimination case, Plaintiff-

Appellant Linda McLendon appeals from the district court's grant

of summary judgment in favor of Defendant-Appellee Ingalls

Shipbuilding, Inc.  For the following reasons, we AFFIRM.

---

     [*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In February 1990, Plaintiff-Appellant Linda McLendon began her employment at Defendant-Appellee Ingalls Shipbuilding, Inc. ("Ingalls") in the position of Designer, Labor Grade 42. McLendon was transferred to the Quality Assurance Department in 1995. From August 1995 to late 1998, McLendon applied for thirteen different promotions within Ingalls and received none. In each case, she was either denied the promotion, or the requisition for the promotion was cancelled.[1]

On December 8, 1997, McLendon filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging that Ingalls denied her promotions from August 2, 1995 to June 18, 1997 because of her gender. The EEOC investigated her complaint and issued a right-to-sue letter on February 26, 1999.

In April 1998, McLendon was finally promoted to Design

---

[1] Following is a list of the promotions for which McLendon applied and the subsequent disposition of each application:

| Requisition Number | Disposition |
| --- | --- |
| 52-1556 (Design Specialist) | Denied September 11, 1995 |
| 52-1590 (Design Specialist) | Denied December 6, 1995 |
| 52-1620 (Design Specialist) | Denied December 6, 1995 |
| 52-1667 (Engineering Supervisor) | Denied March 11, 1996 |
| 52-1704 (Engineering Supervisor) | Denied May 10, 1996 |
| 52-1751 (Design Specialist) | Denied November 11, 1996 |
| 52-1777 (Design Specialist) | Denied December 11, 1996 |
| 52-1783 (Design Specialist) | Denied December 11, 1996 |
| 52-1825 (Design Specialist) | Denied June 19, 1997 |
| 52-1861 (Design Specialist) | Denied July 15, 1997 |
| 52-1788 (Design Specialist) | Denied July 25, 1997 |
| 52-1982 (Design Specialist) | Cancelled February 18, 1998 |
| 52-1962 (Design Specialist) | Denied March 4, 1998 |

Specialist.  Shortly thereafter, on May 7, 1998, McLendon filed a second charge with the EEOC, claiming that Ingalls denied her a prior promotion on March 4, 1998 because of her gender and in retaliation for her first EEOC complaint.  Then, on November 30, 1998, the EEOC issued its right-to-sue letter on this complaint.[2]

In early 1999, McLendon resigned from Ingalls, and on May 17, 1999, she filed suit against Ingalls alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII") and intentional infliction of emotional distress under Mississippi law.  After the completion of discovery, Ingalls filed a motion for summary judgment, which the district court granted on August 11, 2000.

McLendon timely appeals.

## II.  STANDARD OF REVIEW

This court reviews a district court's grant of summary judgment <u>de novo</u>, applying the same standards as the district court.  <u>See</u> <u>Burch v. City of Nacogdoches</u>, 174 F.3d 615, 618 (5th Cir. 1999).  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P.

---

[2]    The EEOC issued its right-to-sue letter on McLendon's second charge before doing so on her initial complaint.

3

56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

"If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." Allen v. Rapides Parish Sch. Bd., 204 F.3d 619, 621 (5th Cir. 2000) (internal quotations and citation omitted). Doubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party. See Burch, 174 F.3d at 619.

In conducting this de novo review, "[w]e can and frequently do affirm the judgment of a district court for reasons other than those expressed by that court." Casiano v. AT&T Corp., 213 F.3d 278, 283 (5th Cir. 2000).

### III.  PROPRIETY OF SUMMARY JUDGMENT IN FAVOR OF INGALLS

McLendon argues that genuine issues of material fact exist as to her claims against Ingalls. Ingalls counters that McLendon's Title VII claims are partially time-barred, and even if those claims were not so prohibited, they do not survive summary judgment on the merits. As to the timely filed Title VII and intentional infliction of emotional distress claims, Ingalls asserts that McLendon also failed to present sufficient evidence to survive summary judgment. McLendon responds that all of her

4

Title VII claims are timely under the continuing violation doctrine.

As both parties agree that claims relating to requisitions 52-1825, 52-1861, and 52-1788 are timely, we examine first the merits of those claims. We then analyze the remaining Title VII claims that Ingalls asserts are time-barred. Finally, we assess the merits of McLendon's state law intentional infliction of emotional distress claim.

### A. McLendon's Title VII Claims Regarding Requisitions 52-1825, 52-1861, 52-1788

A plaintiff may establish a claim of intentional discrimination by either direct or circumstantial evidence. Absent direct evidence of discriminatory intent, as is typically the case, proof via circumstantial evidence is accomplished using the framework set forth in the seminal case of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). First, the plaintiff must demonstrate that a prima facie case of discrimination exists. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000).[3] To establish a prima facie case of sex discrimination

---

[3] We note that the district court did not refer to Reeves, which is the Supreme Court's most recent clarification on the standard for judgment as a matter of law in employment discrimination cases. In Reeves, "[a] unanimous Court held that this circuit had 'misconceived the evidentiary burden borne by plaintiffs who attempt to prove intentional discrimination through indirect evidence.'" Russell v. McKinney Hosp. Venture, 235 F.3d 219, 223 (5th Cir. 2000) (quoting Reeves, 530 U.S. at 146). As will be seen, a Reeves analysis does not alter the result reached by the district court. See infra Parts III.A.1,

in failure-to-promote claims, a plaintiff must show that "(1) she was not promoted, (2) she was qualified for the position she sought, (3) she was within the protected class at the time of the failure to promote, and (4) either the position she sought was filled by someone outside the protected class or she was otherwise not promoted because of her sex." Rutherford v. Harris County, Tex., 197 F.3d 173, 179 (5th Cir. 1999).

"If a plaintiff is successful in establishing a prima facie case of discrimination, the burden then shifts to the defendant to produce a legitimate, nondiscriminatory justification for its actions." (Lee) Evans v. City of Houston, --- F.3d ----, 2001 WL 277839, at *3 (5th Cir. Mar. 21, 2001); see also McDonnell Douglas, 411 U.S. at 802. This is only a burden of production, not persuasion. See Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 255-56 (1981). "Third, if the employer carries its burden, the mandatory inference of discrimination created by the plaintiff's prima facie case drops out of the picture and the fact finder must decide the ultimate question: whether the plaintiff has proven intentional discrimination." Russell v. McKinney Hosp. Venture, 235 F.3d 219, 222 (5th Cir. 2000) (internal quotations, citations, and alterations omitted).

In this regard, the plaintiff may put forth evidence that the employer's asserted reasons for its employment actions were a

---

2, & 3 (examining McLendon's evidence under Reeves and finding it insufficient to survive summary judgment).

6

pretext for discrimination.  See McDonnell Douglas, 411 U.S. at 804.  "[T]he trier of fact may still consider the evidence establishing the plaintiff's prima facie case 'and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual.'"  Reeves, 530 U.S. at 143 (quoting Burdine, 450 U.S. at 255 n.10).  The Supreme Court has pointed out that "once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision."  Id. at 147.  Therefore, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."  Id. at 148.

*1. Requisition 52-1825*

McLendon established a prima facie case for the denial of the requisition 52-1825 promotion to Design Specialist (in the field of piping).  She was not selected; she was qualified for the position[4]; she (as a woman) is within a protected class; and the position was filled by someone outside the protected class, Patrick Albritton.  The burden then shifted to Ingalls to put

---

[4]    Although the district court stated that McLendon was not qualified for this promotion, Ingalls concedes that McLendon was qualified by stating that she did establish a prima facie case in this regard.  We also find that the record supports the fact that McLendon was qualified for this position.

7

forth a non-discriminatory reason for its action.  By asserting that it "chose a more suitable candidate," Ingalls met this burden of production.[5]

McLendon must now create a jury issue that this justification was pretextual.  She states that Ingalls relied upon the fact that Albritton had pipefitter experience and complains that neither the job posting nor the employee requisition contained this criterion.  We note, however, that while not a requirement, the requisition form did state that the ideal candidate "should have pipefitter experience."

McLendon also contends that the position required at least twelve years of experience in the specialized field of piping and that Albritton failed to meet that requirement.  She asserts that Albritton had only six years of design experience and four years as a pipefitter and that she had eighteen years of experience as a pipe design drafter.  McLendon points out that she had more overall piping design experience and that Albritton did not even meet the twelve-year minimum required for the position.  Ingalls responds that Albritton had worked continuously as a design associate, designer, and senior logistics analyst for fifteen years (thus meeting the minimum twelve years) and also had worked at Ingalls twelve years longer than McLendon.

Ingalls further points out that the job interviewer noted

---

[5]    This reason is found in one of Ingalls's documents, entitled "Transfer/Promotion Summary."

that McLendon had difficulty working the math problem given to her in the interview and that Albritton had no such difficulty. McLendon responds that, unlike Albritton, she had a very strong mathematics background, including training in Engineering Calculus I and II and Quantitative Analysis. She also states that Ingalls's Fair Employment Office had recommended that a minority be chosen for that position.

McLendon has not created a genuine issue that Ingalls's reason for selecting Albritton was pretextual. With all reasonable inferences in favor of McLendon, the most that can be said is that it was a judgment call as to who was more qualified for the position. See Scott v. Univ. of Miss., 148 F.3d 493, 509 (5th Cir. 1998) ("Disagreements over which applicant is more qualified are employment decisions in which we will not engage in the practice of second guessing."), abrogated on other grounds by Kimel v. Fla. Bd. of Regents, 528 U.S. 62 (2000); Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 781 (8th Cir. 1995) (stating that "the employment-discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination"). A rational fact finder could find only that both candidates had different strengths and weaknesses and that Ingalls chose Albritton. Any alleged disparity in qualifications is not of such a degree as to

create a jury issue that Ingalls's proffered justification was pretextual.  See Vance v. Union Planters Corp., 209 F.3d 438, 444 (5th Cir. 2000) (stating that the plaintiff in the case need not establish that she was "clearly better qualified" as she also presented other evidence of discriminatory intent).

As McLendon fails to create a fact issue that Ingalls's justification regarding this promotion was pretextual, this claim does not survive summary judgment.

### 2. Requisition 52-1861

McLendon also established a prima facie case as to the denial of the requisition 52-1861 promotion.  She was not selected; she was qualified for the position[6]; she (as a woman) is within a protected class; and the position was filled by someone outside the protected class, Dallas Lizana.  Ingalls met its burden of producing a non-discriminatory reason by stating that McLendon (along with a majority of the other candidates) was not selected because she had "no label plate [experience]."[7]

The burden now shifts back to McLendon to create a jury issue that this justification was pretextual.  She points out that the original typewritten requirements for this position on the requisition form (twelve years of engineering experience with at least five years of label plate experience) were crossed out

---

[6]     See supra note 4.

[7]     See supra note 5.

10

and replaced with the handwritten words "10 years design." Ingalls responds that while label plate experience itself was no longer a requirement, the description of the duties and responsibilities of the position emphasized the desirability of label plate experience (i.e., the requisition states that the successful applicant would "develop and maintain label plate drawings on all contracts"). McLendon replies that even if the position entailed label plate work, she had the requisite experience. She states that she spent her entire nine years at Ingalls creating and checking drawings, almost all of which included label plating. Ingalls counters first that McLendon did not indicate on her application that she had label plate experience. Ingalls states further that even if McLendon's drawing background included label plates, Lizana's experience was far more extensive. Lizana had ten years more seniority at Ingalls and had worked on label plates for twelve years, including the six years immediately prior to this promotion.

As the preceding discussion demonstrates, McLendon has not created a jury issue that Ingalls's justification for not selecting her for this promotion was pretextual. As such, this claim also does not survive summary judgment.

### 3. Requisition 52-1788

McLendon does not pass muster in the first step of the McDonnell-Douglas tripartite analysis with respect to requisition 52-1788 because she did not establish a prima facie case for the

denial of this promotion.  While McLendon is clearly in the protected class and was not selected for the position, she provided no evidence and made no arguments that she was qualified for the position.  The only evidence in the record regarding this promotion is a letter from Ingalls to McLendon stating that she was not selected because she "did not meet the minimum requirements."

Therefore, McLendon does not survive summary judgment on this claim.

### B. Timeliness of McLendon's Remaining Title VII Claims

#### 1. 42 U.S.C. § 2000e-5(e)(1)

"A Title VII claimant must file charges with the EEOC within 180 days after the alleged illegal conduct."  Hood v. Sears Roebuck and Co., 168 F.3d 231, 232 (5th Cir. 1999) (citing 42 U.S.C. § 2000e-5(e)(1)).  The Supreme Court has held that this time limit is akin to a statute of limitations:  "[F]iling a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling."  Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982) (emphasis added); see also Hood, 168 F.3d at 232; Espinoza v. Mo. Pac. R.R. Co., 754 F.2d 1247, 1248 n.1 (5th Cir. 1985).

McLendon filed her first EEOC complaint on December 8, 1997.  As such, her claims regarding requisitions 52-1825 (June 19,

12

1997), 52-1861 (July 15, 1997), and 52-1788 (July 25, 1997) fall within the mandated 180-day period.[8]  On their face, the remaining claims as to the prior promotion denials are time-barred under § 2000e-5(e)(1).

However, actions outside the 180-day period are still viable if they meet the requirements of the continuing violation doctrine.  See Messer v. Meno, 130 F.3d 130, 134-35 (5th Cir. 1997), cert. denied, 525 U.S. 1067 (1999); Glass v. Petro-Tex Chem. Corp., 757 F.2d 1554, 1560-61 (5th Cir. 1985).  "The continuing violation theory relieves a plaintiff of establishing that all of the complained-of conduct occurred within the actionable period if the plaintiff can show a series of related acts, one or more of which falls within the limitations period."  Messer, 130 F.3d at 134-35; see also Waltman v. Int'l Paper Co., 875 F.2d 468, 474 (5th Cir. 1989) ("This equitable exception arises '[w]here the unlawful employment practice manifests itself over time, rather than as a series of discrete acts.'" (alteration in original) (quoting Abrams v. Baylor Coll. of Med., 805 F.2d 528, 532 (5th Cir.1986))).

In order to utilize the continuing violation doctrine, the

---

[8]    The claim concerning requisition 52-1962 is also timely because it falls within the 180-day window of McLendon's second EEOC complaint of May 7, 1998.  However, as discussed infra in Part III.B.2, this claim is barred under 42 U.S.C. § 2000e-5(f)(1).  Requisition 52-1982, which is also within this time frame, is irrelevant because it is undisputed that the requisition was cancelled.  Furthermore, McLendon did not include requisition 52-1982 in her second EEOC complaint.

plaintiff must satisfy a two-pronged test.  First, the plaintiff

"must demonstrate that at least one act occurred within the

filing period."  West v. Phila. Elec. Co., 45 F.3d 744, 754 (3d

Cir. 1995); see also Huckabay v. Moore, 142 F.3d 233, 239 (5th

Cir. 1998); Abrams v. Baylor Coll. of Med., 805 F.2d 528, 533

(5th Cir. 1986).  Second, the plaintiff must illustrate the

requisite nexus among the incidents of discrimination or

harassment within and outside the limitations period.  See

Huckabay, 142 F.3d at 239 (stating that this second inquiry

involves several factors such as subject matter, frequency, and

degree of permanence); Glass, 757 F.2d at 1560, 1561 (noting that

the "core idea" of the doctrine is what, "in fairness and logic,

should have alerted the average lay person to act to protect his

rights").

As discussed supra in Part III.A, McLendon failed to create

jury issues regarding her timely claims.  She therefore does not

satisfy the first prong of the continuing violation analysis, and

we need not address the second prong.  As such, McLendon cannot

take advantage of the continuing violation doctrine to overcome

the timeliness bar to promotion denials occurring prior to

requisitions 52-1825, 52-1861, and 52-1788.[9]

_____

[9]    While the district court noted that Ingalls had raised
the timeliness defense in its motion for summary judgment, the
court disposed of McLendon's claims on the merits.  "We may
affirm a grant of summary judgment on any ground raised to the
district court and upon which both parties had the opportunity to
present evidence."  Shepherd v. Comptroller of Pub. Accounts, 168

*2. 42 U.S.C. § 2000e-5(f)(1)*

Section 2000e-5(f)(1) provides that a civil action must be commenced "within ninety days" after the plaintiff has received a right-to-sue letter from the EEOC. See 42 U.S.C. § 2000e-5(f)(1). This timing requirement, similar to the one in § 2000e-5(e)(1), is non-jurisdictional and thus subject to waiver, estoppel, and tolling. See Crown, Cork & Seal Co., Inc. v. Parker, 462 U.S. 345, 349 n.3 (1983); Espinoza, 754 F.2d at 1248 n.1.

The EEOC issued its right-to-sue letter regarding requisition 52-1962 on November 30, 1998. McLendon filed suit on May 17, 1999, well past the ninety-day window.[10] Therefore, her claim regarding this promotion denial is time-barred as well.[11]

### C. Merits of McLendon's State Law Emotional Distress Claim

McLendon's intentional infliction of emotional distress claim is a pendent state law claim. Therefore, we apply Mississippi substantive law in determining whether McLendon created a jury issue in this regard. See Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan, 883 F.2d 345, 353 (5th Cir. 1989).

_____

F.3d 871, 873 n.1 (5th Cir.), cert. denied, 528 U.S. 963 (1999); see also supra Part II (discussing the standard of review).

[10] McLendon does not make any waiver, estoppel, or tolling arguments in this regard.

[11] See supra note 9.

"[U]nder Mississippi law, [a plaintiff] must show that [the employer's] actions were 'extreme and outrageous,' and 'beyond all possible bounds of decency' to win a claim of intentional infliction of emotional distress."  Stafford v. True Temper Sports, 123 F.3d 291, 296 (5th Cir. 1997) (citations omitted); see also Dawkins v. Sears Roebuck and Co., 109 F.3d 241, 244 (5th Cir. 1997) ("To recover for intentional infliction of emotional distress [under Mississippi law], a plaintiff must prove that the defendant's conduct was 'wanton or willful and that it would evoke outrage or revulsion.'" (citations omitted)).  We have recognized that a plaintiff is required to meet a high standard in order to state a claim for intentional infliction of emotional distress:

> "It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.  Liability has been found only where the conduct has been <u>so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community</u>."

Haun v. Ideal Indus., Inc., 81 F.3d 541, 548 (5th Cir. 1996) (quoting White v. Walker, 950 F.2d 972, 978 (5th Cir. 1991)); see also Jenkins v. City of Grenada, 813 F. Supp. 443, 446 (N.D. Miss. 1993) (stating that "meeting the requisites of a claim for intentional infliction of emotional distress is a tall order in Mississippi").

16

McLendon makes the following allegations regarding this claim:  After her EEOC complaint, Ingalls harassed her by (1) reprimanding her for filing the complaint, (2) removing her from her office and placing her in an aisle across from the men's restroom, (3) allowing its employees to shoot rubber bands at her, (4) encouraging her supervisor to pace back and forth by her desk and to eavesdrop on her telephone conversations, and (5) putting pressure on her to sign a settlement agreement to force her to drop her claims.  McLendon claims that although she had been given a Design Specialist promotion in April 1998, this treatment eventually caused her to resign and obtain other employment.

A rational factfinder could not find that such incidents were "beyond all possible bounds of decency."  McLendon does not create a jury issue as to this claim under the stringent Mississippi standard, and therefore, the district court did not err in granting Ingalls summary judgment in this regard.

## IV.  CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.

17