United States Court of Appeals
Fifth Circuit

**F I L E D**

**September 1, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 03-30706

AUDREY T. CELESTINE; ET AL,

Plaintiffs,

AUDREY T. CELESTINE; WILTON GUILLORY;
ANGEL ANN LEBLANC; EDWINA M. HARRIS;
PATRICIA A. PITRE; ET AL,

Plaintiffs-Appellants,

versus

PETROLEOS DE VENEZUELA S A; ET AL,

Defendants,

CITGO PETROLEUM CORP.,

Defendant-Appellee.

Appeal from the United States District Court
for the Western District of Louisiana
95-CV-2196

Before GARWOOD, HIGGINBOTHAM, and SMITH, Circuit Judges.

GARWOOD, Circuit Judge:[*]

Plaintiffs-appellants Audrey Celestine, et al., appeal the

district court's grant of summary judgment in favor of defendants-

---

[*]Pursuant to 5TH CIR. R. 47.5 the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

appellees, CTIGO Petroleum Corporation (CITGO), denying the appellants' Motion for Relief from Judgment under Rule 60(b)(6). We affirm.

### Facts and Proceedings Below

On May 21, 1993, a group of two hundred and six African-American plaintiffs who then or previously worked at the CITGO Petroleum Corporation's (CITGO) Lake Charles, Louisiana plant, filed suit against CITGO, alleging Title VII claims for hostile work environment racial harassment, as well as for racial discrimination in hiring, promotion and training. These plaintiffs filed a motion for class certification, estimating the existence of more than 1,000 potential class members who either then or previously worked at the Lake Charles plant, or had unsuccessfully applied for employment there. The district court referred the case to a magistrate judge for consideration of the class certification issue.

After a hearing, the magistrate judge informed the parties that he was considering recommending a *sua sponte* grant of summary judgment in favor of CITGO on the hostile work environment claims. Forty-four plaintiffs (the *Celestine* plaintiffs)[1] came forward with summary judgment evidence assertedly supporting their positions that there existed a hostile work environment. After examining the

---

[1] Thirty-six of the forty-four *Celestine* plaintiffs constitute the appellants in this appeal.

2

evidence, the magistrate judge recommended that summary judgment be granted to CITGO on the hostile work environment claims of all the named plaintiffs (other than the below referenced *Proctor* plaintiffs). On July 12, 1996, the district court, in accord with the magistrate judge's recommendation, entered summary judgment dismissing the plaintiffs' hostile work environment claims. The magistrate judge also recommended denial of class certification, and the district court agreed.

On December 15, 1995, thirteen other plaintiffs (the *Proctor* plaintiffs) filed suit against CITGO, and their claims were transferred and consolidated with those of the *Celestine* plaintiffs. However, they were excluded from the district court's July 12, 1996 order granting summary judgment on the hostile work environment claims as they had not yet had a chance to submit evidence regarding their claims. On October 3, 1996, the *Proctor* plaintiffs were put on notice that the magistrate judge was considering a *sua sponte* motion for summary judgment with respect to their hostile work environment claims, and on November 4, 1996, two of the thirteen *Protctor* plaintiffs submitted declarations in support thereof.[2]

On May 15, 1998, this Court affirmed the district court's denial of class certification, *Allison v. Citgo Petroleum Corp.*,

---

[2] The two *Proctor* plaintiffs who submitted declarations in support of their hostile work environment claims were Harvey Hawkins and Georgiana Ardoin.

3

151 F.3d 402, 426 (5th Cir. 1998), and on October 2, 1998 denied appellants' motion for rehearing *en banc* as to the class certification issue. The *Celestine* plaintiffs' case proceeded as a series of individual claims. CITGO filed two motions for summary judgment against the *Celestine* plaintiffs, and on January 11, 2000, the district court granted those motions for summary judgment, ruling that the continuing violation doctrine was inapplicable, and granting summary judgment on each failure to promote and hire discrimination claim.[3] The plaintiffs appealed both the July 1996 grant of summary judgment as to their hostile work environment claims, and the January 2000 grant of summary judgment as to their failure to promote and train claims. This court affirmed both grants of summary judgment on September 18, 2001. *Celestine v.*

---

[3] According to the appellants, the majority of the *Celestine* plaintiffs still have promotion and training claims pending for trial in the district court, and those claims have been consolidated with the *Proctor* plaintiff's promotion and training claims. However, it appears that this Court, in the *Celestine* case, affirmed summary judgment as to both the hostile work environment *and* promotion and training claims. Regardless, as will be addressed in the text below, *National R.R. Passenger Corp. v. Morgan*, 122 S.Ct. 206 (2002), on which appellants rely for their change in the law claim, did not change the law in this Circuit as it applies to discrete claims. This Court did not and still does not apply the continuing violation doctrine to discrete incidents such as training, hiring or promotion. Therefore, to the extent that appellants might assert that what they claim is the less demanding *Morgan* standard would apply to their remaining training, hiring or promotion claims, no exceptional circumstances would be created because *Morgan* did not change the *Celestine* evidentiary standard regarding such discrete incidents.

4

*Petroleos De Venezuela SA*, 266 F.3d 343 (5th Cir. 2001).[4]

On June 10, 2002, the United States Supreme Court rendered its decision in *National R.R. Passenger Corp. v. Morgan*, 122 S.Ct. 2061 (2002). On December 22, 2002, more than six months after the opinion in *Morgan* had been issued, appellants filed a Motion for Relief from Final Judgment under Rule 60(b)(6) claiming *Morgan* had changed the decisional law on which their appeal had been decided. On June 12, 2003, the district court issued a *sua sponte* summary judgment ruling as to the hostile work environment claims of the *Proctor* plaintiff (only one *Proctor* plaintiff, Hawkins, remained at that time),[5] and in a separate ruling entered on June 12, 2003, the district court denied the Motion for Relief from Judgment under Rule 60(b)(6). This appeal of the denial of the Motion for Relief from Judgment followed.

The appellants claim that the district court should have granted them relief under Rule 60(b)(6) because the Supreme Court's ruling in *Morgan* changed the decisional law upon which *Celestine* was based, and therefore created an "extraordinary circumstance" in that a different evidentiary standard would be applied to the two different groups of plaintiffs in this lawsuit; the pre-*Morgan*

---

[4] Throughout this opinion, we refer to the *Celestine v. Petroleos De Venezuela SA* case as *Celestine*.

[5] Because only one *Proctor* plaintiff remains, we refer to him in the singular.

5

standard to the *Celestine* plaintiffs, and the assertedly less demanding post-*Morgan* standard to the sole remaining *Proctor* plaintiff. We hold that the district court did not abuse its discretion in denying Rule 60(b) relief.

**Discussion**

*1. Standard of Review*

A district court's denial of relief from final judgment under Rule 60(b) will only be reversed if the district court abused its discretion. *Bailey v. Ryan Stevedoring Co., Inc.*, 894 F.2d 157, 159 (5th Cir. 1990) *cert. denied*, 498 U.S. 829 (1990). We are limited to a review of whether the denial of the 60(b)(6) motion was an abuse of discretion; we cannot review the underlying merits of the case. *Id.*

*2. Rule 60(b) and changes in decisional law*

Under Federal Rule of Civil Procedure 60(b), a court may provide relief from a final judgment for six alternative reasons:

> "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment." Fed. R. Civ. P. 60(b).

This court views Rule 60(b)(6) as "a residual or catchall provision

6

. . . to accomplish justice under exceptional circumstances." *Edwin H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 357 (5th Cir. 1993). The United States Supreme Court has held that for relief from judgment under Rule 60(b)(6) to be granted, "extraordinary circumstances" must be present. *Ackerman v. United States*, 71 S.Ct. 209 (1950).

Generally, we have held that a change in decisional law after entry of judgment does not constitute the "extraordinary circumstance" that is required in order to grant relief under Rule 60(b)(6). *See Bailey*, 894 F.2d at 160; *see also Picco v. Global Marine Drilling Co.*, 900 F.2d 846, 851 (5th Cir. 1990) (holding that it was an abuse of discretion for the district court to grant relief under Rule 60(b)(6) where the Supreme Court had changed the applicable rule of law). However, the appellants point to *Batts v. Tow-Motor Forklift Co.*, 66 F.3d 743 (5th Cir. 1995), wherein this Court found that, though a change in decisional law "will not normally constitute an extraordinary circumstance, and cannot alone be grounds for relief from a final judgment pursuant to Rule 60(b)(6)," it went on to state, in dicta and in a footnote,

> "[w]e do not hold that a change in decisional law can *never* be an extraordinary circumstance. Courts may find a special circumstance warranting relief . . . . where the subsequent court decision is closely related to the case in question, such as where the Supreme Court resolves a conflict between another circuit ruling and that case. *See, e.g., Ritter v. Smith*, 811 F.2d 1398, 1402-03 (11th Cir. 1987) . . . . [Additionally,] where two cases arising out of the same transaction result in conflicting judgments, relief has been found to be

7

warranted. *See Pierce v. Cook & Co.*, 518 F.2d 720, 723 (10th Cir. 1975)." *Batts*, 66 F.3d at 748 n.6.[6]

Both parties agree that this Court will not find extraordinary circumstances to exist merely because of a change in decisional law. However, the appellants do not claim that they should be granted relief from judgment because of the *Morgan* decision itself. Rather, the appellants aver that because *Morgan* changed the decisional law upon which the *Celestine* plaintiffs' hostile work environment claims were decided, an exceptional circumstance has been created: The evidentiary standard applied to the *Proctor* plaintiff's hostile work environment claim will be different from that which was applied to the other group of plaintiffs (the *Celestine* plaintiffs) in the same lawsuit.

*3. Morgan and the hostile work environment*

In *Morgan*, an African-American plaintiff brought a Title VII

---

[6] Appellants assert that they are supported by the "same transaction" line of cases following *Pierce*, 518 F.2d at 720, which hold that post-judgment relief can be granted when a change in decisional law generates divergent judgments for litigants involved in the same transaction. However, unlike *Pierce*, where the same vehicular accident produced divergent results in federal and state courts, the *Celestine* plaintiffs' claims do not arise out of the same transaction as the plaintiffs in *Morgan*. Moreover, though the *Celestine* and *Proctor* plaintiffs both filed suit complaining of matters while employed at the same CITGO plant, each individual plaintiff experienced different incidents of harassment, and worked under different supervisors at different times. These plaintiffs were not part of a class action; rather, they had consolidated, individual claims. Therefore, any attempted analogy of the case *sub judice* and the *Pierce* "same transaction" line of cases is without merit.

action for racial discrimination and retaliation against his former employer. Typically, a claimant must file a Title VII discrimination claim with the EEOC within 180 (or 300) days of the challenged discrimination. *See* 42 U.S.C. § 2000e-5(e)(1)(2003). However, under the "continuing violations doctrine," a plaintiff may complain of otherwise time-barred discriminatory acts if it can be shown that the discrimination manifested itself over time. *See* *Huckabay v. Moore*, 142 F.3d 233, 238-39 (5th Cir. 1998). The district court in *Morgan* granted partial summary judgment for the employer, but the Ninth Circuit Court of Appeals reversed and remanded. The Ninth Circuit held that a plaintiff may sue on claims that would typically be time barred so long as they either are "sufficiently related" to incidents that fall within the statutory period or are part of a "systematic policy or practice of discrimination that took place, at least in part, within the limitations period." *Morgan*, 122 S.Ct. at 2068.

The Supreme Court affirmed in part and reversed in part. They determined that, contrary to the Ninth Circuit's holding,[7] Title VII precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period, such as hiring and training or promotion claims. However, the Court

---

[7] Though not in line with the Ninth Circuit, the Supreme Court's determination in *Morgan* relating to "discrete acts" was in line with Fifth Circuit precedent. *See, e.g.*, *Huckabay*, 142 F.3d at 239-40 (holding that discrete actions are not entitled to the shelter of the continuing violation doctrine).

affirmed the portion of the Ninth Circuit's decision as to the hostile work environment claims.  The Court stated, "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability . . . . so long as each act is part of the whole."  *Id*. at 2074.

The appellants and appellees both agree that *Morgan* requires a two-part test for determining the evidentiary scope of a hostile work environment claim:  "A court's task is to determine [1] whether the acts about which an employee complains are part of the same actionable hostile work environment practice, and if so, [2] whether any act falls within the statutory time period."  122 S.Ct. at 2076.  However, *Morgan* also established that with respect to claims involving discrete acts, such as hiring, promotion and training, only incidents that take place within the 180 (or 300) day filing period are actionable.  The appellees claim that this is the only change presented by *Morgan*, and that after the case, hostile work environment claims remain subject to the continuing violation doctrine.

*4. The district court did not abuse its discretion by denying the appellants' Motion for Relief from Judgment under Rule 60(b)(6).*

In *Celestine*, which was decided before *Morgan*, we upheld the district court's grant of summary judgment as to the *Celestine*

10

plaintiffs' hostile work environment and failure to promote and train claims. The district court correctly concluded that the relevant time period for that lawsuit was April 29, 1992, to May 24, 1994. In order to introduce evidence of incidents related to a hostile work environment that occurred prior to this designated temporal scope, we required the plaintiffs to prove that an "organized scheme led to and included the present violation." Plaintiffs were also required to show that the "same type of discriminatory acts" occurred both inside and outside the limitations period "such that a valid connection exist[ed] between them." 266 F.3d at 352.

Arguably, our decision in *Celestine* required something more than the standard enunciated in *Morgan* to the extent that *Celestine* required proof of an organized scheme. Otherwise, the evidentiary standard that was applied in *Celestine* clearly remains good law even after *Morgan*, requiring that all the incidents presented in a hostile work environment claim be related and "part of the whole," or same, claim. *Morgan*, 122 S.Ct. at 2075.[8]

---

[8] We also note that *Morgan* plainly did not change the law in this Circuit with respect to discrete acts. As we stated in *Celestine*, "The district court was entirely correct in refusing to apply the continuing violation theory to the appellants' racial discrimination for failure to promote and train claims. This court's decision in *Huckabay* makes clear that a one-time employment event, including the failure to hire, promote, or train . . . is 'the sort of discrete and salient event that should put the employee on notice that a cause of action has accrued. . . . [These] discrete adverse actions, although racially motivated, cannot be lumped together with the day-to-day

11

The *Celestine* plaintiffs assert that this Court in *Celestine* disallowed "evidence of approximately 80 incidents of alleged racial discrimination that occurred prior to the time period designated by the district court for this lawsuit" which they claim would likely have to be actionable under the *Morgan* standard. *Celestine*, 266 F.3d at 352. However, there is evidence, as the appellees aver, that many of these incidents were discrete, hiring or promotion related incidents, and therefore would not be actionable even under the arguably less demanding *Morgan* standard.

In *Celestine*, although we recognized that in some circumstances, incidents occurring outside the 180 day time period could be considered (under the continuing violation doctrine), we affirmed the grant of summary judgment because the appellants

> "neglect the fact that they are before this Court as individual plaintiffs rather than as members of a class. Rather than describing each individual appellant's hostile work environment and explaining why application of the continuing violation doctrine would be appropriate for each appellant's claim, the appellants paint with wide brush strokes, making broad generalizations about the working conditions at CITGO over the last three decades. . . . [M]any of the appellants fail to identify any acts of alleged racial harassment at all during the limitations period." 266 F.3d at 353.

Therefore, we held that the district court did not err in refusing to consider alleged acts of harassment that occurred prior to the limitations period.

---

pattern of racial harassment' and therefore, if otherwise untimely, cannot be saved by the continuing violation doctrine." 266 F.3d at 352 (internal citations omitted).

Appellants argue that this Court has not yet had a chance to specifically apply *Morgan*'s evidentiary standard to a hostile work environment claim. However, they claim that other circuits, as well as district courts in the Fifth Circuit, have done so and determined that the *Morgan* standard, as it relates to hostile work environment claims, is less demanding than that which was previously applied. *See, e.g., Crowley v. L.L. Bean, Inc.*, 303 F.3d 387, 406 (1st Cir. 2002) ("*Morgan* supplants our jurisprudence on the continuing violations doctrine in hostile work environment claims, making it no longer necessary to distinguish between systematic and serial violations"); *Yerby v. Univ. of Houston*, 230 F.Supp.2d 753 (S.D. Tex. 2002) (denying summary judgment on a hostile work environment claim, noting that if an act that contributes to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court to determine liability). The appellees, on the other hand, claim that the Fifth Circuit's pre-*Morgan* decision in *Celestine* is fully compatible with *Morgan*.

While it may be arguable whether the standard which this Court articulated for the hostile work environment claims in *Celestine* is consistent with the newly established *Morgan* standard, our "organized scheme" language was not necessarily crucial to our holding in *Celestine*.

It may be that the standard to be applied to hostile work

environment claims in related cases should be less demanding after *Morgan*.[9]  However, this Court has not yet arrived at that decision, and that issue is not now before us.[10]

## 5.  The Proctor Plaintiff

Another looming problem with the appellants' main contention, that divergent standards will be applied, is that, though the appellants fail to mention the fact in their brief, the *Proctor* plaintiff's hostile work environment claim *has already been decided* by the district court.

The *Proctor* plaintiff, Hawkins, worked for CITGO on three occasions: once in 1984, once in 1985, and then from January 10,

---

[9] Because the Supreme Court in *Morgan* upheld the Ninth Circuit's decision in relation to the hostile work environment claim, it is unclear whether the Supreme Court believed its enunciated standard to be a new requirement, or whether it left the Ninth Circuit free to continue to utilize its then existing standard, as applied to non-discrete, hostile work environment claims.  The Court never specifically disapproved of the test applied by the Ninth Circuit, though it did insert its own language as to the test that should be applied (i.e. "are part of the same actionable hostile work environment practice").  The test used by the Ninth Circuit called for the prior incidents to be either sufficiently related to the incidents falling within the statutory period, or be part of a systematic policy or practice of discrimination that took place within the limitations period.  This requirement of a "systematic policy or practice" could be interpreted as a type of "organized scheme."

[10] Even after the Supreme Court's *Morgan* decision, this Circuit continues to apply the continuing violation doctrine to hostile work environment claims, and to cite *Celestine* as the proper statement of applicable law.  *See, e.g., Felton v. Polles*, 315 F.3d 470, 484 (5th Cir. 2002); *Frank v. Xerox Corp.*, 347 F.3d 130, 136 (5th Cir. 2003).

14

1994 to May, 1995. Hawkins testified that during his 1994-1995 stint with CITGO, he continually saw racial slurs on the walls of the outdoor bathrooms, and had certain interactions with others who used racial slurs. Apart from this testimony, it appears that Hawkins's other claims are based on hearsay; things that other employees told him, or things that he heard about that happened *before he started working at the plant*.[11]

In granting summary judgment to Hawkins's hostile work environment claims, the district court noted that decisions of courts within this circuit have continued to apply the continuing violation doctrine after *Morgan*, and also stated that Hawkins had never filed an EEOC charge, and was instead relying on charges filed by some of the *Celestine* plaintiffs. The district court ruled that because Hawkins established *no* act adverse *to him* within

---

[11] Hawkins was not employed with CITGO until January 1994 (excluding his briefs stints in the mid 1980s). He attempted to bring out evidence of racial harassment that occurred before he was actually working at CITGO about which others had told him. This is not what *Morgan* was about: *Morgan* held that incidents occurring outside the temporal scope of the lawsuit may in some cases be considered *for the purposes of liability to the party who suffered from them*; "the statute in no way bars a plaintiff from recovering damages for that portion of the hostile environment that falls outside the period for filing a timely charge. . . . [T]he timeliness requirement does not dictate the amount of recoverable damages." 122 S.Ct. at 2075. But it is unlikely that the *Morgan* court meant that a plaintiff could recover for harassment which occurred before he began working, and from which he could not have suffered. The statute at issue "only has the consequence of limiting liability because filing a timely charge is a prerequisite to having an actionable claim." *Id*. at 2076. The district court does not appear to have excluded any evidence of racial harassment suffered by Hawkins.

15

the limitations period, he could not establish a hostile work environment claim.  This element of the standard was in fact the same in *Celestine* and *Morgan*.[12]

Most importantly though, the district court held that "[t]he behaviors of which Hawkins complains does not rise to the level of racial harassment under Title VII.  While clearly crude, humiliating, and insensitive, they would be insufficient to establish racial harassment."  The district court threw out Hawkins's evidence because it was mostly hearsay, not because it was barred on the grounds of limitations.  Regardless, the district court's summary judgment decision was not based on the lack of an "organized scheme," but rather on its recognition that

> "When determining whether a workplace constitutes a 'hostile work environment,' courts closely consider the 'frequency of the discriminatory conduct; its severity, whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'  The behaviors of which Hawkins complains does not rise to the level of racial harassment under Title VII." (internal citations omitted).[13]

### Conclusion

---

[12] We recognize that the district court further states that Hawkins also "failed to demonstrate that an organized scheme led to and included these alleged violations."  However, that does not appear to have been crucial to its holding.

[13] We do not pass on the correctness of the district court's decision as to Hawkins.  We merely note that appellants have not shown that it clearly depends on what they claim to be a change in the law as between *Celestine* and *Morgan* so as to constitute an extraordinary circumstance requiring that appellants receive Rule 60(b)(6) relief.

16

For the foregoing reasons, we hold that the district court did not abuse its discretion in denying Rule 60(b)(6) relief because no extraordinary circumstances are present.

AFFIRMED.