COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| MARIO AGUILAR, | § | No. 08-07-00072-CV |
|  | § |  |
| Appellant, | | Appeal from |
|  | § |  |
| v. | | 168th District Court |
|  | § |  |
| SOCORRO INDEPENDENT SCHOOL | | of El Paso County, Texas |
| DISTRICT, | § |  |
|  | | (TC # 2003-5019) |
| Appellee. | § |  |

**O P I N I O N**

Mario Aguilar appeals the trial court's decision to grant the Socorro Independent School District's (SISD) plea to the jurisdiction. Aguilar brought suit alleging wrongful termination/constructive discharge and retaliation. SISD filed a plea to the jurisdiction and a motion for summary judgment. Finding that Aguilar failed to properly grieve his reassignment within the District and failed to initiate a grievance of his alleged constructive discharge, we affirm.

**FACTUAL SUMMARY**

Aguilar served as Assistant Superintendent of Operations for SISD. In 1998, he and then-Superintendent Don Schulte reported to the FBI certain improprieties and fraud at SISD with respect to the process that was used to award construction projects. According to his affidavit, Aguilar served as an undercover informant for the FBI in this investigation. The FBI had him sign a document preventing him from revealing the existence of the investigation without its prior approval. The existence of the investigation was made known only to Interim Superintendent Gary Brooks and former Superintendent Don Schulte.

In August 2002, the District's Board of Trustees named Aguilar as Interim Superintendent while it searched for a permanent superintendent. The nomination was based upon an agreement that Aguilar would not submit an application for the permanent position. Despite that agreement, Aguilar submitted an application in March 2003. Shortly thereafter, he was terminated as Interim Superintendent and resumed his duties as Assistant Superintendent of Operational Services. The Board of Trustees selected Dr. Robert Duron as the new superintendent on June 1, 2003.

On August 5, 2003 Aguilar wrote a letter to Dr. Duron advising that he was working in conjunction with state and federal authorities in relation to an ongoing criminal investigation:

> Please be advised that I am working in conjunction with state and federal authorities in relation to an on-going criminal investigation, regarding past and present Board member's activities. These activities were reported to the proper law enforcement agencies and are currently being investigated. I am an informant on issues relating to illegal activities between certain Board Members and certain entities. I would prefer to not get into specifics regarding this investigation, however, you may contact my representative who can corroborate my situation.

Two days later, Dr. Duron sent Aguilar a notice of reassignment, positioning him as an assistant principal within the District. Dr. Duron testified that this decision was based on Aguilar's insubordination and other issues and that the decision was made a few days prior to delivery of the notice. On August 18, 2003, Aguilar filed a grievance with SISD, alleging that Dr. Duron had demoted him to an assistant principal after he told Dr. Duron that he had been cooperating with the FBI in an investigation of the District.

On September 26, 2003, James Vasquez arbitrated the grievance. He recounted that Aguilar's attorney had presented the following:

● Aguilar was demoted as retaliation for informing Dr. Duron that he was cooperating with the FBI in an investigation of previous and present board members.

● Aguilar was involved with on-going criminal investigations.

● The timing of a memorandum from Dr. Duron demoting Aguilar--two days after an August 5 letter from Aguilar to Dr. Duron--lent substantiation to his allegation.

● Some friction existed between Aguilar and Dr. Duron over conversations with board members.

Vasquez found that Aguilar's reassignment was consistent with District policy and state law and he issued the following recommendation:

My recommendation on this grievance will be based on a set of circumstances that leave me very little room to respond to the grievant's claim and request for relief. [Counsel for Aguilar] made it very clear that neither the arbitrator nor the board of trustees have the authority to rule on the legal issues in the grievance. According to [counsel], the proper forum for resolution of the issues is a court of law. [Counsel] further informed me that the purpose of the arbitration hearing was simply to meet requirement of the district's grievance policy for administrative relief. He would not provide me information I believe vital to my ability to make a recommendation on Mr. Aguilar's grievance. He stated he would not tell me when or to whom Mr. Aguilar reported the violation of law he describes in his handwritten letter of August 5.

Despite the arbitrator's recommendation, Aguilar never reported to his new assignment and instead obtained written excuses from his physician for his absences. Aguilar resigned from his position with SISD on October 31, 2003 and filed suit on November 17, 2003.

## PLEA TO THE JURISDICTION

In a single point of error, Aguilar challenges the granting of SISD's plea to the jurisdiction.

### Standard of Review

A plea to the jurisdiction contests a trial court's subject matter jurisdiction. *Bland Independent School District v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). Whether a court has subject matter jurisdiction is a question of law which we review *de novo*. *Texas Department of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). Whether undisputed evidence of jurisdictional facts establishes a trial court's jurisdiction is also a question of law subject to *de novo* review. *Id*. In some cases, disputed evidence of jurisdictional facts that also implicate the merits

of the case may require resolution by the finder of fact. *Id.* In that circumstance, the trial court cannot grant the plea, and the fact issue must be resolved by the fact finder. *Id.* at 227-28. If the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court must rule on the plea as a matter of law. *Id.* at 228. This standard generally mirrors that of a summary judgment under TEX.R.CIV.P. 166a (c). *Id.*

*The Texas Whistleblower Act*

The trial court found that Aguilar failed to properly grieve his reassignment within the District. He had the opportunity to disclose the facts of his whistleblowing activity at the grievance hearing, but deliberately failed to do so. The court also found that Aguilar failed to initiate a grievance of his alleged constructive discharge.

Section 554.006 of the Texas Government Code provides:

(a) A public employee must initiate action under the grievance or appeal procedures of the employing state or local governmental entity relating to suspension or termination of employment or adverse personnel action before suing under this chapter.

(b) The employee must invoke the applicable grievance or appeal procedures not later than then 90th day after the date on which the alleged violation of this chapter:

(1) occurred; or
(2) was discovered by the employee through reasonable diligence.

(c) Time used by the employee in acting under the grievance or appeal procedures is excluded, except as provided by Subsection (d), from the period established by Section 554.005.

(d) If a final decision is not rendered before the 61st day after the date procedures are initiated under Subsection (a), the employee may elect to:

(1) exhaust the applicable procedures under Subsection (a), in which event the employee must sue not later than the 30th day after the date those procedures are exhausted to obtain relief under this chapter; or

(2) terminate procedures under Subsection (a), in which event the

> employee must sue within the time remaining under Section 554.005 to obtain relief under this chapter.

TEX.GOV'T CODE ANN. § 554.006 (Vernon 2004).

Prior to 1995, subsection (a) of Section 554.006 required an employee to *exhaust* any applicable grievance or appeal procedures before filing suit. Act of May 22, 1993, 73rd Leg., R.S., ch. 268, § 1, 1993 TEX.GEN.LAWS 583, 610 (amended 1995)(current version at TEX.GOV'T CODE ANN. § 554.006. The current statute provides that the employee must "*initiate* action under the grievance or appeal procedures" of the employing entity before filing suit. [Emphasis added]. TEX.GOV'T CODE ANN. § 554.006. The issue squarely before the court is the intent of the statutory amendment and the meaning of "initiate."

### *"Initiate" a Grievance under Section 554.006*

Aguilar contends that in a whistleblower action, a claimant need only initiate a grievance; exhaustion is no longer required. By filing the proper grievance under the District's procedures that ultimately culminated in an arbitrator's recommendation, Aguilar insists he properly "initiated" a grievance under the statute. Otherwise, the trial court will be placed in the position of having to measure the quality of participation in a grievance hearing. SISD counters that even though Aguilar filed a written grievance, he deliberately refused to participate in the grievance process and deprived SISD of its statutory opportunity to resolve the complaint before facing litigation. The District suggests the facts demonstrate that (1) a hostile relationship existed between Aguilar and Dr. Duron; (2) Aguilar submitted a handwritten cryptic note to Dr. Duron; (3) Aguilar presented neither his government representatives nor any corroboration that the FBI had demanded his silence; and (4) Aguilar "cloaked" himself in secrecy on advice of counsel. It concludes that if these actions satisfy Section 554.006, the statute's requirements are meaningless.

We begin our analysis with *The University of Texas Medical Branch at Galveston v. Barrett* 159 S.W.3d 631 (Tex. 2005). There, a doctor sued his former employer only 27 days after initiating grievance procedures complaining of the termination of his employment. *Id.* at 632. The court held that if a public employee prematurely files suit under the Texas Whistleblower Act before the expiration of the 60-day period for a public employer to complete its grievance or appeal procedures, the suit should be abated until the end of the 60-day period rather than being dismissed, provided that the procedures have been timely initiated and can continue for the required 60 days or until a final decision is rendered, whichever occurs first. *Id.* at 632-33. The court disapproved of the contrary holdings in *Watson v. Dallas Indep. Sch. Dist.*, 135 S.W.3d 208 (Tex.App.--Waco 2004, no pet.), *Harris County v. Lawson*, 122 S.W.3d 276 (Tex.App.--Houston [1st Dist.] 2003, pet. denied), *Bellows v. Hendrick*, 2004 WL 1854240 (Tex.App.--Corpus Christi Aug. 19, 2004, pet. filed), and *City of San Antonio v. Marin*, 19 S.W.3d 438 (Tex.App.--San Antonio 2000, pet. denied).

In *Marin*, the City contended that the claimants failed to exhaust the grievance procedure. *City of San Antonio v. Marin,* 19 S.W.3d 438 (Tex.App.--San Antonio 2000, pet. denied), *disapproved in University of Texas Medical Branch at Galveston v. Barrett*, 159 S.W.3d 631, 632 (Tex. 2005). The claimants initiated a grievance proceeding two days before filing their lawsuit. *Marin*, 19 S.W.3d at 440. In interpreting the practical effect of the amendment to Section 554.006, the court looked to legislative intent, examining the statute as a whole rather than mere isolated provisions. *Id.*, *citing Chevron Corp. v. Redmon*, 745 S.W.2d 314, 316 (Tex. 1987) and *Morrison v. Chan*, 699 S.W.2d 205, 208 (Tex. 1985). The statute provides that if a final decision has not been rendered in the grievance procedure within 60 days of the date the grievance is filed, the employee has the option of (1) exhausting the grievance without losing the right to sue for 30 days following exhaustion or (2) terminating the grievance procedure and filing suit within the time remaining under

the statute of limitations. *Id. citing* TEX.GOV'T CODE ANN. § 554.006(d). In practical effect, the employee did not have to exhaust his administrative remedies if the grievance procedure was not expeditiously resolved. *Id.*, *citing Gregg County v. Farrar*, 933 S.W.2d 769, 776 (Tex.App.--Austin 1996, no writ)(noting that legislative history indicated that 30-day deadline was designed to protect the employee from unfair delays). In light of subsection (d), the change in the wording from "exhaust" to "initiate" in subsection (a) had no effect on the implementation of the statute. *Id.* at 441. "The use of the word 'initiate' in the current version appears to be an attempt by the Legislature to clarify the language of sub-section (a) so that it more accurately reflects the true process of events under the statute as a whole." *Id.* This interpretation upholds the purpose of Section 554.006, which is to afford the employer "the opportunity to correct its errors by resolving disputes before being subjected to the expense and effort of litigation." *Id.*, *citing Farrar*, 933 S.W.2d at 755, *citing* House Research Organization, Bill Analysis. Tex. H.B. 1405, 71st Leg., R.S. (1989). "To take the Legislature's action in substituting the word 'initiate' for the word 'exhaust' in sub-section (a) to mean that an employee could initiate a grievance procedure and then, two minutes, two hours, or two days later, file a lawsuit under the Whistle-Blower Act would not only render the remainder of the statute meaningless, it would completely abdicate the purpose of Section 554.006." *Id.*

The Texas Whistleblower Act does not define what actions are required to "initiate" the appeals procedure. *See* TEX.GOV'T CODE ANN. § 554.006(a). *Barrett* and *Marin* discuss Section 554.006, but both cases deal with the situation where the complainant filed a grievance and then filed suit before either the expiration of the 60 day resolution period or the rendition of a final decision. Here, Aguilar's grievance culminated in an arbitrator's recommendation, but it was Aguilar's refusal to participate in the arbitration that caused the trial court to grant SISD's plea to the jurisdiction. Although *Barrett* specifically disapproved of the holding in *Marin* and ruled that the case be abated

instead of dismissed for want of jurisdiction, the dicta in *Marin* regarding the statutory amendments is helpful to our analysis.

The record reveals that Aguilar did not fully cooperate with the arbitrator's request for information during the hearing. The arbitrator commented that Aguilar's attorney admitted that the grievance was filed simply to comply with the administrative procedures and that the proper forum would be a court of law. By not complying with the arbitrator's requests for information or presenting information that would allow the arbitrator to reach a decision, Aguilar's action did not serve the purpose of the statute--to afford the employer "the opportunity to correct its errors by resolving disputes before being subjected to the expense and effort of litigation." *See Marin*, 19 S.W.3d at 441, *citing Farrar*, 933 S.W.2d at 755, *citing* House Research Organization, Bill Analysis. Tex. H.B. 1405, 71st Leg., R.S. (1989). Allowing a complainant to simply file a grievance and then refuse to participate in the grievance hearing before filing suit is analogous to the situation where a complainant files a grievance then files suit immediately thereafter. Aguilar's tactical decision completely circumvents the purpose of Section 554.006. We overrule Aguilar's sole point and affirm the judgment of the trial court.


July 31, 2009

ANN CRAWFORD McCLURE, Justice

Before McClure, J., Ables, Judge, and Gomez, Judge
Ables, Judge,  sitting by assignment
Gomez, Judge, sitting by assignment