

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-15-00078-CV

THE CITY OF LUBBOCK, TEXAS, APPELLANT

V.

LAZARO WALCK, APPELLEE

On Appeal from the 72nd District Court
Lubbock County, Texas
Trial Court No. 2014-509,907, Honorable Ruben Gonzales Reyes, Presiding

November 16, 2015

MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Appellee Lazaro Walck filed a Whistleblower Act[1] suit against his employer, the City of Lubbock. When the trial court denied the City's plea to the jurisdiction, the City brought this interlocutory appeal.[2] We will reverse and render in part, vacate and dismiss in part, and otherwise affirm the order of the trial court.

---

[1] The Texas Whistleblower Act is contained in chapter 554 of the Texas Government Code. *See* TEX. GOV'T CODE ANN. §§ 554.001-.010 (West 2012).

[2] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (West Supp. 2015).

## Background

At the time of the events leading to his suit, Walck was a detective in the City's police department. During 2013, while enrolled in a masters-degree program at Texas Tech University, Walck sought an interview with the city manager as part of a class project, unrelated to his work as a police officer. The city manager notified the City's chief of police, Roger Ellis, of the request.

On July 8, 2013, Chief Ellis sent an e-mail to Assistant Chief Wayne Bullock requesting that Walck's supervisor tell him not to contact the city manager without permission from his superiors. Walck explained to his supervising sergeant that his intended meeting with the city manager was related only to his masters-degree program, but Chief Ellis's order stood.

Two days later, on July 10, Walck sent an e-mail to Lubbock's mayor and members of its city council, complaining of this situation. Also on July 10 a lieutenant in Walck's chain of command notified him of his immediate transfer from his position of burglary-unit detective to administrative assistant in "person crimes" pending a "formal" internal affairs investigation.

In a July 12 memo to the officers in his chain of command, Walck requested information about the internal affairs investigation and the reason for his transfer. Walck expressed the belief his transfer was "a form of punishment and an adverse decision was made for exercising [his] First Amendment right." Some forty-five minutes after submitting the memo, Walck received notice that his permit to work as an off-duty security officer at a local restaurant was suspended.

2

On an unspecified date, Walck submitted a grievance that was heard by Chief Ellis on July 29. In an August 9 memo, Chief Ellis ruled Walck's grievance concerned the suspension of his outside work permit. According to the memo Walck, among other things, stated at the hearing he had lost $1,100 in wages because of the suspension of his permit. Chief Ellis affirmed the suspension.

The record shows on August 12 Walck submitted a written grievance on a City grievance form concerning the suspension of his outside work permit. An attached narrative stated, "This is an appeals request in reference to Chief Ellis' decision to continue having my outside employment permit suspended until the conclusion of the administrative investigation." Walck also stated that as of August 12 he had lost income of $1,980 from his outside work. Walck concluded the narrative stating, "I am suffering a severe financial hardship not being able to work my overtime at [the restaurant], and I believe having my outside overtime work permit taken away from me is an excessive form of punishment for the allegations brought against me." An assistant city manager conducted a hearing on Walck's August 12 grievance on August 26. Walck received a favorable ruling, described in the assistant city manager's memo dated August 29.

The memo recites the hearing's purpose was consideration of the suspension of Walck's outside work permit. It indicates the assistant city manager considered written and oral testimony. After stating findings, the memo concludes, "there was no basis or justification to suspend your outside work permit; therefore, I am directing the Lubbock Police Department to reinstate your outside work permit immediately." Walck received notice of the decision on September 3.

Walck was ordered to report to internal affairs for further questioning. He had not been questioned since July 17. The questioning did not address new facts but raised allegations of new policy violations. Walck later was ordered to return for more questioning on September 12.

Walck received a letter of reprimand from Sergeant Chad Brouillette, dated September 25. The letter contained a brief description of Walck's actions regarding the contact with the city manager, and recited that the internal affairs investigation revealed that Walck, "by [his] own admissions," was "working on school related projects, scheduling interviews for school related projects and sending emails related to school related projects while on duty and using city equipment." The letter stated Walck's actions violated two provisions of the Lubbock Police Department manual and four policies of the City of Lubbock Employee Policy Manual. Walck filed a written grievance on September 27, requesting removal of the letter of reprimand from his file. The grievance form narrative included Walck's statement that he believed the letter of reprimand was an act of retaliation by Chief Ellis.

A grievance hearing to consider the letter of reprimand was held on October 22, before another assistant city manager. An October 23 letter expressed the assistant city manager's ruling. He indicated testimony was received at the hearing and he found "no credible evidence to support the alleged violation of the policy that formed the basis of your letter of reprimand." He ordered the letter of reprimand rescinded and its originals or copies sent to Walck or his attorney.

Walck's attorney sent a demand letter to the City dated December 19, which recited the history of the personnel actions and the grievances, stated that Walck had

been moved back to his position as a detective, but had incurred over $3000 in lost outside work income, had incurred attorney's fees and had suffered the emotional toll of the investigation and the personnel actions. The letter requested compensation of $8,000 under the Whistleblower Act, and threatened litigation. The record does not provide what, if any, response the City made.

Walck filed suit against the City under the Whistleblower Act on January 21, 2014.[3] The City answered and filed a plea to the jurisdiction with supporting evidence. Walck's response also was supported by evidence. A hearing was conducted and the trial court denied the City's plea by written order. This interlocutory appeal followed.

**Analysis**

**Legal Background**

The Whistleblower Act provides "[a] state or local governmental entity may not suspend or terminate the employment of, or take other adverse personnel action against, a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority." TEX. GOV'T CODE ANN. § 554.002. The act provides "[a] public employee whose employment is suspended or terminated or who is subjected to an adverse personnel action in violation of [the act] is entitled to sue for injunctive relief, actual

---

[3] A notice printed on Walck's original petition indicates it was electronically transmitted for filing on January 18, 2014. We take judicial notice that January 18, 2014, was a Saturday and Monday January 20 was Martin Luther King, Jr. day, a national holiday. Therefore, suit was deemed filed on January 21, 2014. *See* TEX. R. CIV. P. 21(f)(5)(A) (providing a document electronically transmitted on a Saturday, Sunday, or legal holiday is deemed filed on the next day that is not a Saturday, Sunday, or legal holiday).

damages, court costs, and reasonable attorneys' fees." TEX. GOV'T CODE ANN. § 554.003(a). The act's purpose is twofold: (1) protecting public employees from retaliation by their employer when, in good faith, they report a violation of law, and (2) securing lawful conduct by those who direct and conduct the affairs of government. *City of New Braunfels v. Allen,* 132 S.W.3d 157, 161 (Tex. App.—Austin 2004, no pet.).

Under the Whistleblower Act, governmental immunity is expressly waived when a public employee alleges a violation of Chapter 554 of the Government Code. TEX. GOV'T CODE ANN. § 554.0035. Whether a claimant's whistleblower complaint comes within the act's waiver of governmental immunity may be addressed through a plea to the jurisdiction. *Ortiz v. Plano Indep. Sch. Dist.,* No. 02-13-00160-CV, 2014 Tex. App. LEXIS 7, at *2 (Tex. App.—Fort Worth Jan. 2, 2014, pet. denied) (mem. op.) (citing *Canutillo ISD v. Farran,* 409 S.W.3d 653, 655-57 (Tex. 2013)).

"Sovereign immunity and its counterpart, governmental immunity, exist to protect the State and its political subdivisions from lawsuits and liability for money damages." *Mission Consol. Indep. Sch. Dist. v. Garcia,* 253 S.W.3d 653, 655 (Tex. 2008). A municipality may assert governmental immunity in a suit for money damages against it. *City of San Antonio v. Alamo Aircraft Supply, Inc.,* 448 S.W.3d 507 (Tex. App.—San Antonio 2014, no pet.) (citing *Reata Constr. Corp. v. City of Dallas,* 197 S.W.3d 371, 374 (Tex. 2006)); *see Suarez v. City of Texas City,* 465 S.W.3d 623, 631 (Tex. 2015) ("Absent a valid statutory or constitutional waiver, trial courts lack subject-matter jurisdiction to adjudicate lawsuits against municipalities)." "[Governmental] immunity from suit defeats a trial court's subject matter jurisdiction . . . ." *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 225-26 (Tex. 2004).

6

Review of the trial court's ruling on a plea to the jurisdiction begins with the live pleadings. *Id.* A plaintiff must affirmatively demonstrate the trial court's jurisdiction. *Miranda,* 133 S.W.3d at 226. "When a plea to the jurisdiction challenges the existence of facts alleged by the pleader to establish the trial court's subject-matter jurisdiction, the trial court must consider relevant evidence submitted by the parties." *Id.* at 227 (citing *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 555 (Tex. 2000)). This standard generally mirrors that of a traditional summary judgment. *Id.* at 228; TEX. R. CIV. P. 166a(c). Thus, the trial court may consider affidavits and other summary judgment-type evidence. *FKM P'ship v. Board of Regents of Univ. of Houston Sys.,* 255 S.W.3d 619, 628 (Tex. 2008). The court takes as true evidence favorable to the nonmovant and indulges every reasonable inference and resolves any doubts in the nonmovant's favor. *City of Waco v. Kirwan,* 298 S.W.3d 618, 622 (Tex. 2009).

**Issue Analysis**

**Second Issue**

We begin with the City's second issue, through which it asserts the trial court lacked subject-matter jurisdiction over Walck's Whistleblower Act claim because he did not file suit within the ninety-day limitation period of section 554.005. *See Prairie View A&M Univ. v. Chatha,* 381 S.W.3d 500, 515 (Tex. 2012) ("a statutory prerequisite to suit . . . (such as timely filing a lawsuit) is jurisdictional when the defendant is a governmental entity").

Section 554.005 states: "[e]xcept as provided by section 554.006, a public employee who seeks relief under this chapter must sue not later than the 90th day after

the date on which the alleged violation of this chapter: (1) occurred; or (2) was discovered by the employee through reasonable diligence." TEX. GOV'T CODE ANN. § 554.005. Section 554.006(c) provides, "Time used by the employee in acting under the grievance procedure or appeals procedures is excluded . . . from the period established by Section 554.005." TEX. GOV'T CODE ANN. § 554.006(c).

In his live petition Walck states he "suffered adverse employment action in retaliation for his reporting a violation of his Constitutional rights to an appropriate law enforcement authority, namely [his chain of command]." Walck's report was made to his chain of command in his July 12 e-mail. Walck submitted grievances for two adverse personnel actions, the suspension of his outside work permit and the issuance of a letter of reprimand. Walck's outside work permit was suspended on July 12. While the record is unclear when Walck filed his initial grievance, it is clear that Chief Ellis heard the matter on July 29, Walck's city grievance was heard on August 26 and Walck was notified of the assistant city manager's favorable resolution of the grievance on September 3. Suit was filed January 21, 2014. Even assuming the time Walck was acting under the grievance or appeals period, excluded under section 554.006, spans July 12 through September 3, a suit based on the suspension of Walck's outside work permit as an adverse personnel action is barred by limitations.

Based on the letter of reprimand as an adverse personnel action, Walck's suit was timely filed and the City does not contend otherwise.

To avoid limitations as to his first grievance, Walck relies on the "continuing violation doctrine." In so doing, he characterizes the internal affairs investigation as the "umbrella" of an organized scheme of retaliation comprising the work permit

8

suspension, the transfer and the letter of reprimand. The City disagrees, contending the continuing violation doctrine has no application here because the "issues are clearly separate as shown by the fact that two (2) separate grievances were filed regarding two (2) separate and distinct actions." We agree with the City.

The continuing violation doctrine may have application when an unlawful employment practice manifests over time, rather than through a series of discrete acts. *City of Houston v. Smith,* No. 01-13-00241-CV, 2014 Tex. App. LEXIS 2097, at *11 (Tex. App.—Houston [1st Dist.] Feb. 25, 2014, no pet.) (mem. op.) (citing *Davis v. Autonation USA Corp.,* 226 S.W.3d 487, 493 (Tex. App.—Houston [1st Dist.] 2006, no pet.)). The doctrine allows a plaintiff to avoid a limitations bar for an event falling outside a statutory period when he has been subjected to a system of discriminatory practices whose effects "may not manifest themselves as individually discriminatory except in cumulation over a period of time." *Huckabay v. Moore,* 142 F.3d 233, 238 (5th Cir. 1998) (quoting *Messer v. Meno,* 130 F.3d 130, 134-35 (5th Cir. 1997)). The plaintiff must "show an organized scheme leading to and including a present violation, such that it is the cumulative effect of the discriminatory practice, rather than any discrete occurrence, that gives rise to the cause of action." *Celestine v. Petroleos de Venezuella SA,* 266 F.3d 343, 352 (5th Cir. 2001) (citing *Huckabay,* 142 F.3d at 239). "The core idea of the continuing violations theory, however, is that equitable considerations may very well require that the filing periods not begin to run until facts supportive of a [claim] are or should be apparent to a reasonably prudent person similarly situated. The focus is on what event, in fairness and logic, should have alerted the average lay person to act to protect his rights." *Huckabay,* 142 F.3d at 238 (quoting *Meno,* 130 F.3d at 135).

9

Viewing the record in his favor, the continuing violation doctrine cannot aid Walck in this case. Even if we view the evidence as showing both the outside work permit suspension and the reprimand were part of a single "scheme," the conclusion is inescapable that the suspension of his work permit would have alerted a reasonable person in Walck's situation to take action to protect his rights. *Huckabay,* 142 F.3d at 240. That Walck recognized the discrete action of suspending his work permit as "individually discriminatory," *id.* at 238, is fully demonstrated by his initiation of the grievance that Chief Ellis heard on July 29 and the assistant city manager decided on August 29.

We therefore sustain the City's second issue in part, to the extent it challenges the trial court's jurisdiction to adjudicate Walck's Whistleblower Act claim based on the alleged adverse personnel action of suspending his outside work permit. Otherwise, we overrule the City's second issue.

**First Issue**

Through its first issue, the City asserts governmental immunity from suit was not waived for Walck's Whistleblower Act lawsuit because Walck did not properly initiate the City's grievance process, a jurisdictional prerequisite to suit under the Whistleblower Act. Because of our disposition of the City's second issue, we limit our analysis here to the question whether Walck properly initiated the grievance process concerning his second complaint, the letter of reprimand. Tex. R. App. P. 47.1.

Before filing suit under the act an employee must "initiate action under the grievance or appeal procedures of the employing state or local governmental entity

10

relating to suspension or termination of employment or adverse personnel action." TEX. GOV'T CODE ANN. § 554.006(a). If a "final decision" in the grievance or appeal procedures is not rendered before the sixty-first day after their initiation, the employee has the option of exhausting the procedure initiated or terminating the procedure and timely filing suit. TEX. GOV'T CODE ANN. § 554.006(a),(d)(1)&(2).

The act does not prescribe the actions required to "initiate action" under an employer's grievance or appeal procedures. *Moore v. Univ. of Houston-Clear Lake,* 165 S.W.3d 97, 102 (Tex. App.—Houston [14th Dist.] 2005, no pet.). However, section 554.006 affords "the governmental entity an opportunity to investigate and correct its errors and to resolve disputes before incurring the expense of litigation." *Fort Worth Independent School District v. Palazzolo*, No. 02-13-00006-CV, 2014 Tex. App. LEXIS 291, at *8-9 (Tex. App.—Fort Worth, January 9, 2014, no pet.) (citing *Leyva v. Crystal City,* 357 S.W.3d 93, 99 (Tex. App.—San Antonio 2011, no pet.)); *see also City of Fort Worth v. Shilling,* 266 S.W.3d 97, 102 (Tex. App.—Fort Worth 2008, pet. denied); *University of Tex. Med. Branch v. Hohman,* 6 S.W.3d 767, 774 (Tex. App.—Houston [1st Dist.] 1999, pet. dism'd w.o.j.).

We initially note our agreement with the City that the initiation of the grievance procedure under section 554.006(a) is a jurisdictional requirement for the filing of suit. *Palazzolo*, 2014 Tex. App. LEXIS 291, at *7-8 (citing *Tarrant Cnty. v. McQuary,* 310 S.W.3d 170, 174 (Tex. App.—Fort Worth 2010, pet. denied)); *see Chatha,* 381 S.W.3d at 511 (reasoning that section 311.034, as amended, "evinces the Legislature's intent that all statutory prerequisites are now jurisdictional requirements as to governmental entities and are properly asserted in a plea to the jurisdiction"); *Fort Bend ISD v. Gayle,*

11

371 S.W.3d 391, 395 (Tex. App.—Houston [1st Dist.] 2012, pet. denied); *Jordan v. Ector Cnty.,* 290 S.W.3d 404, 406 (Tex. App.—Eastland 2009, no pet.) (finding no jurisdiction where employee failed to initiate properly the employer's grievance process); *Med. Arts Hosp. v. Robison,* 216 S.W.3d 38, 44 (Tex. App.—Eastland 2006, no pet.) (analyzing jurisdictional question in light of 2005 amendment to TEX. GOV'T CODE § 311.034 and concluding that the trial court had no jurisdiction where former employee did not provide notice of her Whistleblower Act claim before filing suit); TEX. GOV'T CODE ANN. § 311.034 (West 2013) ("Statutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity").

The City first argues our disposition of this issue should be guided by *Palazzolo*, 2014 Tex. App. LEXIS 291, at *8-9, and *Aguilar v. Socorro Indep. Sch. Dist.,* 296 S.W.3d 785, 790 (Tex. App.—El Paso 2009, no pet.).  In both those cases, the courts determined the plaintiffs had not satisfied the initiation requirement of section 554.006 because, having invoked a grievance or appeal procedure, they actively circumvented the governmental entity's effort to redress the complained-of conduct.  In *Aguilar*, the claimant initiated the school district's grievance procedure but at the grievance arbitration hearing refused to fully cooperate with the arbitrator's request for information. His attorney indicated a grievance was filed simply to comply with administrative procedures and the proper forum was "a court of law."  *Aguilar,* 296 S.W.3d at 790. The court concluded Aguilar's "tactical decision completely circumvent[ed] the purpose of Section 554.006."  It affirmed the trial court's order sustaining the district's plea to the jurisdiction.  *Id.*

In *Palazzolo* the claimant, an assistant principal, reported alleged unlawful conduct by other employees. He then received a negative job appraisal report, was transferred to another school, and was reduced in pay. Palazzolo initiated the school district's grievance procedure. Among other things, a hearing officer found Palazzolo's pay rate should not have been reduced and amended his appraisal report to state that he met or exceeded expectations. Palazzolo pursued a Level II grievance. At a conference, the hearing officer granted Palazzolo's request to remain at the high school where he was ultimately transferred. Palazzolo next pursued a Level III grievance, before the school board. At the hearing, he expressed no objection to his school assignment and added he was "fine" with the amended evaluation. Some two weeks later, Palazzolo filed suit alleging a violation of the Whistleblower Act. The retaliatory acts of the district he alleged included transferring him and making a negative entry on his appraisal report. The district brought an interlocutory appeal after the trial court denied its motion for summary judgment. 2014 Tex. App. LEXIS 291, at *1-5.

The court of appeals discussed *Aguilar* and held that by advising the school board he had no dispute with his transfer and appraisal report, Palazzolo actively circumvented the district's effort to redress his grievances. *Id.* at *14-15. It reversed the trial court's denial of summary judgment.

We cannot agree this record conclusively establishes that Walck actively circumvented the City's grievance process. Walck neither refused to fully participate in the process like Aguilar, 296 S.W.3d at 790, nor did he represent to the assistant city manager he was satisfied with the relief he had received. *Palazzolo*, 2014 Tex. App. LEXIS 291, at *14-15. Because we conclude the City has not established the court

13

lacks jurisdiction because of Walck's failure to initiate the City's grievance procedure, we overrule the City's first issue.

### Third Issue

By its third issue, the City contends Walck did not provide proper notice of his Whistleblower Act claim based on the withdrawal of his outside work permit. Because we have found the trial court lacks jurisdiction over this claim, addressing the City's third issue is unnecessary to the disposition of the appeal. TEX. R. APP. P. 47.1.

### Fourth Issue

In its fourth issue, the City claims Walck has no private right of action against Chief Ellis. The prayer of Walck's live petition states in part, "Plaintiff prays that: . . . A civil penalty not to exceed $15,000 against Chief Roger Ellis pursuant to Tex. Gov't Code §554.008[4] for taking wrongful adverse action against [Walck]." The pleading

---

[4] Section 554.008 provides:

(a) A supervisor who in violation of this chapter suspends or terminates the employment of a public employee or takes an adverse personnel action against the employee is liable for a civil penalty not to exceed $15,000.

(b) The attorney general or appropriate prosecuting attorney may sue to collect a civil penalty under this section.

(c) A civil penalty collected under this section shall be deposited in the state treasury.

(d) A civil penalty assessed under this section shall be paid by the supervisor and may not be paid by the employing governmental entity.

(e) The personal liability of a supervisor or other individual under this chapter is limited to the civil penalty that may be assessed under this section.

makes no other mention of a claim against Chief Ellis. Chief Ellis was not named as a defendant and the record does not show he was served with process or made an appearance in the case.

Section 554.008 limits an individual defendant's personal liability to a civil penalty of not more than $15,000. TEX. GOV'T CODE ANN. § 554.008(e). The right to sue for the collection of this civil penalty belongs to the "attorney general or appropriate prosecuting attorney." TEX. GOV'T CODE ANN. § 554.008(b). Walck argues the statute should be construed so that "an appropriate prosecuting attorney would include the attorney prosecuting the Whistleblower action for the aggrieved employee."

Because Chief Ellis is not before the trial court, resolving whether section 554.008 properly can be read as granting Walck a private right of action against Chief Ellis would amount only to an advisory opinion, both by the trial court and this court. An advisory opinion decides "abstract questions of law without binding the parties." *Brown v. Todd,* 53 S.W.3d 297, 302 (Tex. 2001). Texas courts have no jurisdiction to issue advisory opinions. *See, e.g., Speer v. Presbyterian Children's Home & Serv. Agency,* 847 S.W.2d 227, 229 (Tex. 1993); TEX. CONST. art. II, § 1. "Under [the separation of powers] doctrine, governmental authority vested in one department of government cannot be exercised by another department unless expressly permitted by the constitution. Thus [the separation of powers article] prohibit[s] courts from issuing advisory opinions because such is the function of the executive rather than the judicial department." *Texas Ass'n of Business v. Texas Air Control Bd.,* 852 S.W.2d 440, 444

_____
TEX. GOV'T CODE ANN. § 554.008.

15

(Tex. 1993). Because we find we lack jurisdiction to address the City's fourth issue, it is dismissed.

Conclusion

We reverse the order of the trial court in part and render an order dismissing Walck's Whistleblower Act claim based on the suspension of his outside work permit. TEX. R. APP. P. 43.2(c). We vacate that portion of the trial court's order addressing its jurisdiction of a claim against Chief Ellis under section 554.008 and dismiss the corresponding issue on appeal. TEX. R. APP. P. 43.2(e). Otherwise the order of the trial court is affirmed.

James T. Campbell
Justice