**Reverse and Remand and Opinion Filed August 27, 2020**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-19-01290-CV

## FERNANDO HERRERA, Appellant
## V.
## DALLAS INDEPENDENT SCHOOL DISTRICT, Appellee

**On Appeal from the 101st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-18-07866**

## OPINION

Before Justices Schenck, Molberg, and Nowell
Opinion by Justice Molberg

Fernando Herrera, a teacher terminated by Dallas Independent School District (DISD) at the end of his probationary contract, appeals an order granting DISD's plea to the jurisdiction on his Whistleblower Act claim. *See* TEX. GOV'T CODE §§ 554.001–.010. We reverse and remand because a fact issue exists on whether Herrera appropriately initiated a pre-suit grievance[1] before filing suit, and thus on the legal question of whether DISD's immunity has been waived.

---

[1] *See id.* § 554.006.

## BACKGROUND

On June 15, 2018, Herrera sued DISD, alleging DISD terminated him in violation of the Whistleblower Act in retaliation for complaints he made to the Texas Department of Family and Protective Services, Division of Child Protective Services (CPS) regarding suspected child abuse by other DISD teachers.[2]

In its answer, DISD asserted the trial court lacked subject matter jurisdiction over Herrera's claims and it was immune from suit and liability because Herrera failed to fulfill certain conditions precedent. Specifically, DISD claimed Herrera failed to comply with government code section 554.006 and "failed to provide [it] notice of a potential whistleblower claim regarding the separation of his employment." *See* TEX. GOV'T CODE § 554.006. Later, DISD filed two pleas to the jurisdiction, the first of which contained its assertion regarding section 554.006.

According to his petition, Herrera began working for DISD as a bilingual elementary school teacher at McShan Elementary School on May 29, 2013. During his employment, he made various complaints regarding suspected child abuse by other teachers, including an anonymous report in May 2015[3] and complaints to DISD and to CPS in the spring of 2017.

---

[2] *See* TEX. GOV'T CODE § 554.002(a) (prohibiting state or local governmental entities from suspending, terminating, or taking other adverse personnel action against a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority).

[3] Herrera's petition does not indicate to whom this anonymous report was made.

His petition alleges he made a good faith report of a violation of law by reporting to CPS that he had witnessed a teacher inappropriately touching a student and that he had been informed that a parent suspected another teacher had inappropriately touched another student. He alleges these reports involved an actual violation of law, were made to CPS, an appropriate law enforcement authority, and that he was terminated and damaged as a direct result of these reports.

Herrera also alleges that within a month of his making the reports in 2017, DISD placed him on administrative leave, later notified him he was being terminated for cause, withdrew that for-cause decision before his administrative hearing occurred,[4] and ultimately notified him that he was being terminated at the end of the school term because DISD was not renewing his contract and had determined it was in the district's "best interest" to take that action.[5]

In its first plea to the jurisdiction,[6] DISD asserted Herrera failed to initiate DISD's grievance process under its DGBA (Local) policy before filing suit. *See* TEX. GOV'T CODE § 554.006. In his pleadings, Herrera did not allege he initiated

---

[4] Sections 21.103 and 21.104 of the Texas Education Code govern a probationary teacher's rights to an administrative hearing regarding a termination and make a distinction between terminations occurring at the end of a school year and those occurring during the school year. Our references to DISD's withdrawal of its for-cause decision to terminate Herrera before his administrative hearing refer to the applicable processes under sections 21.104 and 21.1041, which are not at issue here. *See* TEX. EDUC. CODE §§ 21.104, 21.1041. Thus, Herrera's prior grievance and request for a hearing under section 21.1041 do not impact any issues before us. *See* TEX. EDUC. CODE § 21.1041.

[5] *See* TEX. EDUC. CODE § 21.103.

[6] DISD filed two pleas to the jurisdiction. The trial court heard and decided only the first one, which was filed on August 14, 2019. The matters presented in DISD's other plea are not at issue in this appeal.

any such grievance process. Instead, Herrera alleged he was informed that "since he held a probationary contract he has no rights to engage in the grievance procedure" and "[t]herefore, all conditions precedent . . . have been satisfied and fulfilled."

DISD submitted certain evidence in connection with its plea, including its DGBA (Local) policy, which allows probationary teachers to submit certain grievances, including those regarding end-of-term terminations and whistleblower violations, and which states employees have a certain amount of time to submit grievances, starting when they "first knew or, with reasonable diligence, should have known of the decision or action giving rise to the grievance or complaint."[7]

DISD also submitted evidence of various letters DISD sent Herrera regarding the status of his employment and various grievances Herrera filed.

In a letter to Herrera dated December 11, 2017, DISD stated, "You are hereby notified that the Dallas Independent School District (the "District") is recommending that your employment be terminated, for good cause, pursuant to Texas Education Code § 21.104 and [DISD] Board Policies DF (LOCAL), DFAA (LEGAL) and FL (LOCAL)." The letter told Herrera if he wanted to appeal that decision, he would need to submit a written request to the Texas Education Agency's (TEA's) Commissioner of Education within fifteen days from the date of the letter. The letter

_____

[7] While DISD's DGBA (Local) policy generally gives employees fifteen days to act, for whistleblower complaints, employees may initiate DGBA (Local) grievances "within the time specified by law." As indicated previously, government code section 554.006(b) gives employees up to ninety days.

also advised him that once a timely request was received, the TEA would schedule a hearing before an independent hearing officer. Finally, the letter warned him if he failed to make a timely request for a hearing, "the termination decision is final."

Herrera submitted a timely written request appealing the December 11, 2017 termination decision to the TEA. He also submitted a DISD grievance. After receiving his grievance, a DISD representative told Herrera by email, "You cannot go through the Grievance and Appeal process regarding your termination since you are a Chapter 21 employee. That being said, you should go through the TEA appeal process." In response to Herrera's written TEA appeal, the TEA assigned a case number, appointed an independent hearing examiner, and scheduled an administrative hearing on March 20, 2018, regarding his termination.

The March 20, 2018 hearing never occurred. Instead, before the hearing and because of what DISD describes as a "business decision," DISD withdrew its December 11, 2017 termination letter to Herrera, moved to dismiss his TEA appeal, and "chose to pursue termination of [Herrera's] probationary employment contract at the end of the contract period at the conclusion of the 2017-2018 school year."[8]

---

[8] From a Chapter 21 standpoint, by doing this, DISD made it impossible for Herrera to obtain a TEA administrative hearing regarding his termination. *See* TEX. EDUC. CODE § 21.103 (allowing a district's board of trustees to terminate a probationary contract teacher "at the end of the contract period if in the board's judgment the best interests of the district will be served by terminating the employment" and stating, "The board's decision is final and may not be appealed."); *compare* TEX. EDUC. CODE § 21.104 (allowing termination of probationary contract teacher at any time for good cause as defined therein); *id.* § 21.1041 (stating probationary contract teacher "may be discharged at any time for good cause as determined by the board of trustees," but providing that the teacher "is entitled to a hearing as provided under Subchapter F, if the teacher is protesting proposed action under Section 21.104").

On March 20, 2018, the same date on which Herrera's TEA hearing was originally scheduled, DISD sent Herrera a letter entitled "Excess Notification Letter" that stated, in part:

> School districts determine their staffing needs based on student enrollment, and decreasing enrollment or school consolidations can often create an overabundance of staff, typically referred to as excess employees. . . . We regret to inform you that your position has been identified as excess for the 2018–2019 school year. We appreciate your continued service at your current campus until the end of the 2017–2018 school year.

Then, on March 29, 2018, DISD sent Herrera a letter entitled "Notice of Intent to Recommend Non-renewal or Termination at the End of the Contract Term" that told Herrera DISD's "[s]uperintendent . . . intends to recommend, for approval, to the Board of Trustees, pursuant to Texas Education Code 21.103 and District Board Policies DFAB (LEGAL) or DFBB (LEGAL/LOCAL), that it is in the best interests of the District that your contract end at the conclusion of the contract period."

DISD's Board of Trustees approved the superintendent's recommendation on April 26, 2018, in a meeting that began at 6:00 p.m. and adjourned at 7:43 p.m., according to the meeting minutes DISD provided in its evidence. DISD notified Herrera of the Board's vote and termination in a certified letter that Herrera received May 4, 2018, nine days later. We discuss that letter further below.

Also on April 26, 2018, the same night as the Board's vote, Herrera submitted a grievance under DISD's DGBA (Local) grievance system, and DISD confirmed its receipt. Specifically, at 7:38 p.m., DISD's "notification system" sent Herrera a

–6–

"Grievance Submission Confirmation Email" with a message informing Herrera that his "[g]rievance has been submitted" and including the information Herrera included in his grievance. As the dissent notes, his grievance included March 29, 2018, as the "incident date," but it also listed "termination" under the "grievance type" and included several statements communicating his belief DISD was violating the Whistleblower Act in its decision to terminate him. Specifically, Herrera's April 26, 2018 grievance stated:

> My notice of intent to recommend non-renewal or termination at the end of the contract term for best interest/excess staff has been in retaliation for making good faith reports to the appropriate law enforcement authorities on other employees that have violated the law.[9]

> He also stated, "I have claims of harassment, discrimination, whistleblower

violations, retaliation, breaching contract, and wrongful termination. DISD is in clear violation of The Whistleblower Act."[10]

The next day, in a letter dated April 27, 2018, DISD informed Herrera it had "closed" his grievance because the March 29, 2018 notice to which he referred was not a termination letter but was instead a "courtesy notice of a proposed future action" and "thus a grievance cannot be submitted." That letter also told him that if he receives a termination letter in the future he "may submit an appeal at that time."

---

[9] His "best interest/excess staff" phrase is consistent with the phrasing DISD used in its March 20, 2018 and March 29, 2018 letters.

[10] Herrera's only claim in this lawsuit is a Whistleblower Act claim.

However, in the certified letter from DISD Herrera received on May 4, 2018, DISD told Herrera its decision "is final . . . and may not be appealed" and did not mention DISD's DGBA (Local) grievance policy.[11] Herrera did not submit an additional grievance after he received that letter.

Herrera filed suit on June 15, 2018, less than ninety days after his April 26, 2018 grievance. More than a year later, on August 14, 2019, DISD filed the plea to the jurisdiction at issue here. The trial court conducted a hearing and granted DISD's plea, dismissing Herrera's claim for want of jurisdiction. Herrera timely appealed.

## ANALYSIS

### *Standard of Review*

Governmental units, including school districts, are immune from suit unless the state waives immunity. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d

---

[11] The letter stated, on DISD letterhead:

Probationary Teacher Notice of Termination
April 26, 2018
Fernando Herrera
[Address & Employee ID number redacted]

YOU ARE HEREBY NOTIFIED that the Board of Trustees, at a lawfully called meeting on April 26, 2018, voted that it is in the best interests of the District that your probationary contract be terminated at the end of the 2017–18 school year, pursuant to Texas Education Code Section 21.103(a) and DISD Board Policy DFAB (Legal). In accordance with the law, the Board's decision to terminate a probationary employee at the end of a contract period is final and may not be appealed.

/s/ Dan Micchiche, President                    Date: April 26, 2018
Board of Trusteees
Dallas Independent School District

cc:    Karry Chapman, Chief of Human Capital Management
       Jack Elrod, General Counsel

–8–

755, 770 (Tex. 2018). Immunity from suit may be asserted through a plea to the jurisdiction that challenges the pleadings, the existence of jurisdictional facts, or both. *Id*. We review a trial court's disposition of a plea to the jurisdiction de novo. *City of Houston v. Houston Mun. Emps. Pension Sys*., 549 S.W.3d 566, 575 (Tex. 2018).

Here, where DISD challenged the existence of jurisdictional facts with supporting evidence, our standard of review mirrors that of a traditional summary judgment, requiring Herrera to raise a genuine issue of material fact to overcome DISD's challenge to the trial court's subject matter jurisdiction. *See Alamo Heights*, 544 S.W.3d at 771. We take as true all evidence favorable to Herrera and indulge every reasonable inference and resolve any doubts in his favor. *Id*. However, we cannot disregard evidence necessary to show context or evidence and inferences unfavorable to him if reasonable jurors could not. *Id*.

The Whistleblower Act contains an immunity waiver, stating:

A public employee who alleges a violation of this chapter may sue the employing state or local governmental entity for the relief provided by this chapter. Sovereign immunity is waived and abolished to the extent of liability for the relief allowed under this chapter for a violation of this chapter.

TEX. GOV'T CODE § 554.0035.

The Act also contains certain prerequisites to suit, such as a requirement to "initiate action under the [state or local government employer's] grievance or appeal procedures before suing," *see id*. § 554.006(a), and a requirement to sue within

–9–

ninety days of the date the employer's violation "occurred or was discovered by the employee through reasonable diligence," except where the deadline is extended as provided in section 554.006, *see id.* § 554.005. Employees who must initiate action under their employer's applicable grievance or appeal procedures under section 554.006 must "invoke" those procedures within that same ninety day period. *See id.* § 554.006(b).

Recently, in a Whistleblower Act case involving section 554.005's requirement to sue within ninety days, the Texas Supreme Court confirmed that "[w]hen a statutory prerequisite to suit is not met, 'whether administrative (such as filing a charge of discrimination) or procedural (such as timely filing a lawsuit),' the suit may be properly dismissed for lack of jurisdiction." *City of Madisonville v. Sims*, No. 18-1047, 2020 WL 1898540, at *3 (Tex. Apr. 17, 2020) (quoting *Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 515 (Tex. 2012)).

Importantly, section 554.006's requirement that an employee initiate a grievance or appeal under a governmental entity's procedure is "'to afford the governmental entity with the opportunity to investigate and correct its errors and to resolve disputes before incurring the expense of litigation.'" *Fort Bend Indep. Sch. Dist. v. Gayle*, 371 S.W.3d 391, 395 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) (quoting *W. Houston Charter Sch. Alliance v. Pickering*, No. 01-10-00289-CV, 2011 WL 3612288, at *8 (Tex. App.—Houston [1st Dist.] Aug. 18, 2011, no pet.) (mem. op.)); *Aguilar v. Socorro Indep. Sch. Dist.*, 296 S.W.3d 785, 789 (Tex.

–10–

App.—El Paso 2009, no pet.) (same, quoting *City of San Antonio v. Marin*, 19 S.W.3d 438, 441 (Tex. App.—San Antonio 2000, no pet.), *disapproved of on other grounds by Univ. of Tex. Med. Branch v. Barrett*, 159 S.W.3d 631, 633 n.7 (Tex. 2005) (per curiam));[12] *City of Fort Worth v. Shilling*, 266 S.W.3d 97, 102 (Tex. App.—Fort Worth 2007, pet. denied) (citing *Marin*, 19 S.W.3d at 441); *Moore v. Univ. of Houston-Clear Lake*, 165 S.W.3d 97, 103 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (same, quoting *Gregg Cty. v. Farrar*, 933 S.W.2d 769, 775 (Tex. App.—Austin 1996, pet. denied)).

The two central questions in this appeal are whether the Whistleblower Act required Herrera to initiate a pre-suit grievance under government code section 554.006 before he filed suit, and if so, whether a genuine issue of material fact exists on whether he did so. We examine both issues below.

*Application of Government Code § 554.006 to Employees*
*Covered Under Education Code § 21.103*

In his first issue, Herrera argues that because his termination was final and not reviewable through the administrative appeal process under education code section 21.103,[13] he was not required to comply with any pre-suit requirements under government code section 554.006 before filing his lawsuit. We disagree.

---

[12] In *Barrett*, the court stated, "Section 554.006 does not require that grievance or appeal procedures be exhausted before suit can be filed; rather, it requires that such procedures be timely initiated and that the grievance or appeal authority have 60 days in which to render a final decision." 159 S.W.3d at 632.

[13] *See* TEX. EDUC. CODE § 21.103.

–11–

Section 554.006 states, in part, that a public employee "must initiate action under the grievance or appeal procedures of the employing state or local governmental entity relating to suspension or termination of employment or adverse personnel action before suing under this chapter" and "must invoke the applicable grievance or appeal procedures not later than the 90th day after the date" the alleged violation occurred, was discovered, or should have been discovered through reasonable diligence. *See* TEX. GOV'T CODE § 554.006(a), (b); *see also id.* §§ 311.034, 311.106 (providing in section 311.034 that pre-suit notice requirements are jurisdictional and providing in section 311.106 that "must" creates a condition precedent).

Education code section 21.103 does not alter those requirements, and government code section 554.006 does not make any exceptions or exemptions for employees covered by education code section 21.103. *See* TEX. EDUC. CODE § 21.103; TEX. GOV'T CODE § 554.006. We overrule Herrera's first issue.

*Compliance with Government Code § 554.006*

In his second issue, Herrera argues that even if section 554.006 applied to him under the circumstances, a material fact issue exists regarding his compliance with its pre-suit grievance initiation requirements and that the trial court erred in granting DISD's plea.

Neither party disputes that Herrera submitted his April 26, 2018 grievance, but they disagree about whether it satisfies section 554.006's requirements. In

–12–

DISD's view, it fails to do so because it addressed DISD's March 29, 2018 letter, not DISD's letter dated April 26, 2018, that Herrera received on May 4, 2018, informing Herrera the Board had voted to approve the termination. In essence, DISD maintains, and the dissent agrees, that Herrera's grievance was premature and that he should have filed another grievance after he received DISD's letter informing him of the Board's vote on May 4, 2018, despite Herrera's specific complaint that challenged his "termination" as violating the Whistleblower Act.

We disagree with DISD and the dissent. When viewing the evidence under the applicable standard of review, we do not believe DISD has established its initial burden to demonstrate Herrera failed to satisfy section 554.006's requirements and instead believe a fact question exists on that issue based on DISD's own evidence.

First, we note that Herrera's April 26, 2018 grievance satisfies DISD's own definition of grievance under its DGBA (Local) policy. That policy defined "grievance" as "a complaint by an employee . . . involving wages, hours, or conditions of work (including, but not limited to . . . termination)." Herrera's April 26, 2018 grievance complained about "termination" under grievance type and communicated his belief DISD was violating the Whistleblower Act in its decision to terminate him.

The dissent refers to the Board's vote to approve the termination recommendation as the "actual decision to terminate," but based on DISD's own evidence, a fact-finder could conclude that Herrera's April 26, 2018 grievance was

–13–

submitted on the same day as—and within less than two hours of—the Board's vote approving his termination.[14]

Further, despite DISD's April 27, 2018 letter, nothing within DISD's DGBA (Local) grievance policy indicated that DISD employees must delay filing termination-related grievances until after Board approval of a superintendent's recommendation to terminate or after receipt of a DISD letter confirming the Board's vote to approve the recommendation. Instead, DISD's policy contains language suggesting employees should file grievances sooner, not later, as employees are given a certain time frame to file a grievance from the date they "first knew or, with reasonable diligence, should have known of the decision *or action giving rise to the grievance or complaint*" (emphasis added). Here, the March 29, 2018 letter was the first formal step in a process that led to certain, possibly pro forma termination. Finally, despite the statements in DISD's April 27, 2018 letter, when Herrera received DISD's certified letter on May 4, 2018, informing him of the Board's vote, Herrera was told DISD's decision was "final and could not be appealed."[15]

---

[14] The core difference between our view and the dissent's view is reflected in the dissent's statement that Herrera's "asserted Whistleblower Act claim does not concern the recommendation, but rather his actual termination" and its related conclusion that Herrera's April 26, 2018 grievance concerned only the recommendation, but not the termination. We view the two events as inextricably linked on this record, and considering the plain text of Herrera's grievance (which refers both to the March 29, 2018 date and to termination), we conclude his grievance complained about both and thus satisfied section 554.006(b)'s requirements. *See* TEX. LAB. CODE § 554.006(b).

[15] In its brief, DISD states that Herrera's "failure to grieve deprived it of notice and the opportunity to cure any purported errors regarding the termination of his employment," a concept with which the dissent seems to agree. However, this concept is exactly the opposite of what a reasonable juror might conclude happened based on this record. The record here shows that Herrera grieved his termination within no more

These facts distinguish this situation from the non-binding cases cited by DISD and the dissent. *See Pickering*, 2011 WL 3612288, at \*8; *Jordan v. Ector Cty.*, 290 S.W.3d 404, 406 (Tex. App.—Eastland 2009, no pet.). In *Pickering*, the school district filed a plea to the jurisdiction challenging an employee's compliance with section 554.006 in connection with two events: being placed on a corrective action plan on July 9, and being constructively discharged on August 3. *Pickering*, 2011 WL 3612288, at \*6. On the constructive discharge claim, the court stated:

> The trial court's ruling is expressly based on Pickering's July 22 letter, which predated Pickering's resignation. *This letter does not reference Pickering's resignation.* The record thus establishes that Pickering did not initiate a grievance with respect to the August 3, 2009 constructive discharge alleged in her petition.

than two hours after DISD's Board voted to approve it, and within no more than a day, DISD closed Herrera's grievance, thus depriving itself of the opportunity Herrera had provided DISD to investigate and cure its purported errors regarding his termination. Moreover, the same day that Herrera filed his April 26, 2018 grievance, DISD drafted a letter to Herrera informing him that his termination "may not be appealed." At best, DISD's categorical assertion to Herrera that his termination, taken pursuant to state law *and* district procedure, "may not be appealed" is misleading. A reasonable juror might well conclude that it is calculated to likely misinform a layperson to believe there is no administrative avenue for redress of a termination in violation of the Texas Whistleblower Act or other laws. In fact, although DISD's termination letter does not say so, non-appealability in the whistleblower context relates only to Herrera's right of appeal to the commissioner of education under Texas Education Code section 21.103, not his appeal to DISD. At worst, DISD is deliberately attempting to lure whistleblowers into a jurisdictional abyss through a game of legal "gotcha," a game DISD appears to be more than willing to play to its advantage. *See Barfield v. Dallas Indep. Sch. Dist.*, No. 05-04-00374-CV, 2004 WL 2804861, at \*4 (Tex. App.—Dallas Dec. 3, 2004, no pet.) (mem. op.) (deciding, for third time on appeal, that former employee's whistleblower case should be remanded and tried). Because the effect of this accidental or deliberate misrepresentation by the District is not squarely before us, we do not decide its relevance, if any, to this opinion. However, regardless of any underlying motivations, we cannot help but note the considerable waste of time and resources for litigants and courts caused by such actions. The Whistleblower Act's underlying purposes are twofold: (1) to enhance open government by protecting public employees from retaliation by their employers when an employee reports a violation of the law in good faith, and (2) to secure lawful conduct by those who direct and conduct the affairs of government. *Id.* at \*2.

*Id.* (emphasis added). Thus, it was her grievance's content, not its timing, that prevented Pickering from proceeding with her constructive discharge claim. On the claim involving her alleged demotion from a placement on a corrective action plan, Pickering attempted to rely on a letter that was not in the record and another letter that complained about her corrective action plan and that sought a hearing outside and different from a hearing through the district's applicable grievance system. *Id.* at *6–8. Under those circumstances, the court of appeals concluded that the district satisfied its initial burden of showing that Pickering did not initiate a grievance regarding her corrective action plan or constructive discharge within the district's applicable grievance policy and that the trial court erred in denying the district's plea to the jurisdiction. *Id.* at *8.

In *Jordan*, the employee did not file a grievance regarding her termination before filing her whistleblower claim but instead relied on a grievance she sought to initiate prior to her termination—one based not on her termination but instead on a complaint regarding an unrelated job posting. *Jordan*, 290 S.W.3d at 406. The court held that her grievance did not satisfy section 554.006's requirements because it failed to address her termination, the claim at issue in her lawsuit. *Id.*

In contrast to *Pickering* and *Jordan*, in this case, Herrera's April 26, 2018 grievance (1) is in the record before us, (2) fits DISD's own definition of a grievance according to its applicable policy, (3) specifically mentions termination and the basis of Herrera's challenge, (4) sought a hearing through its applicable grievance system,

–16–

and (5) was submitted within the ninety-day period before Herrera filed suit. We find these distinctions to be significant and thus do not reach the same conclusion here.

As indicated, we disagree with DISD and the dissent's suggestion that Herrera's April 26, 2018 grievance was premature and somehow deprived the court of jurisdiction over Herrera's termination-related whistleblower claim. Employment law has long recognized that differences may exist between the dates that allegedly unlawful decisions are made, communicated, and eventually come to fruition, and courts have often found it appropriate to use the date that the employee is placed on notice of an adverse action, even if the action is not yet final, has not yet come to fruition, and its consequences will not be experienced until later. *See, e.g. Del. State Coll. v. Ricks*, 449 U.S. 250, 256, 262 (1980) (despite possibility that tenure denial might be changed through grievance proceeding, limitations period ran not from date grievance was denied but instead from date college notified associate professor of its decision not to grant him tenure); *Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 493 (Tex. 1996) (per curiam) (stating "limitations period begins when the employee is informed of the allegedly discriminatory employment decision, not when that decision comes to fruition" and concluding time to file charge of discrimination regarding termination ran from date the employer notified employee she would be fired if she did not return from leave by a year later, not from date when she did not return and her employment was terminated); *Chatha*, 381 S.W.3d

–17–

at 509–10 (time to file charge of discrimination for alleged pay discrimination under state law runs from date employee is informed of discriminatory pay decision, not from later date when the employer subsequently pays employee discriminatory amount).

While *Ricks*, *Specialty Retailers*, and *Chatha* are not Whistleblower Act cases, we find the analysis there persuasive and analogous in this context. We also note that in *City of Madisonville v. Sims*, the Texas Supreme Court relied on *Chatha* in concluding that the Whistleblower Act's ninety-day limitations period is a jurisdictional statutory prerequisite to suit. *Sims*, 2020 WL 1898540, at *3.

Finally, Herrera's grievance seemingly fulfills the purpose of government code section 554.006(a) "to afford [DISD] with the opportunity to investigate and correct its errors and resolve disputes before incurring the expense of litigation." *See Gayle*, 371 S.W.3d at 395 (quoting *Pickering*, 2011 WL 3612288, at *8); *Aguilar*, 296 S.W.3d at 789; *Shilling*, 266 S.W.3d at 102; *Moore*, 165 S.W.3d at 103; *Farrar*, 933 S.W.2d at 775. Herrera's grievance gave DISD notice of the same allegations involved in the lawsuit, specifically, that DISD was violating the Whistleblower Act in its decision to terminate him. Thus, on this evidence, a jury could reasonably conclude that Herrera's April 26, 2018 grievance provided DISD the opportunity to investigate and resolve the precise allegation at the heart of his lawsuit, namely his termination in violation of the Whistleblower Act.

Under these circumstances, we conclude that dismissal was inappropriate because a fact question exists on whether Herrera complied with section 554.006 by initiating his April 26, 2018 DGBA (Local) grievance, making it improper for the trial court to grant DISD's jurisdictional plea. *See* TEX. GOV'T CODE § 554.006; *see also Burleson v. Collin Cty. Cmty. Coll. Dist.*, No. 05-15-01361-CV, 2017 WL 511196, at *9 (Tex. App.—Dallas Feb. 8, 2017, no pet.) (mem. op.) (reversing order granting plea to the jurisdiction and stating, "Because the grievance gave notice of the same allegations in the lawsuit, we conclude [the employee] complied with the jurisdictional prerequisites for a whistleblower suit regarding those circumstances."); *City of Dallas v. Watts*, 248 S.W.3d 918, 922 (Tex. App.—Dallas 2008, no pet.) (affirming denial of plea to jurisdiction where evidence raised fact issue on whether employee initiated employer's grievance procedures before filing suit). We sustain Herrera's second issue.

## CONCLUSION

For the foregoing reasons, we reverse the trial court's September 27, 2019 order granting DISD's plea to the jurisdiction and motion to dismiss and remand the case for further proceedings consistent with this opinion.

/Ken Molberg/
KEN MOLBERG
JUSTICE

191290f.p05

Schenck, J., dissenting.

–19–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

FERNANDO HERRERA, Appellant

No. 05-19-01290-CV          V.

DALLAS INDEPENDENT
SCHOOL DISTRICT, Appellee

On Appeal from the 101st Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-18-07866.
Opinion delivered by Justice
Molberg. Justices Schenck and
Nowell participating.

In accordance with this Court's opinion of this date, the trial court's September 27, 2019 order granting Dallas Independent School District's plea to the jurisdiction and motion to dismiss is **REVERSED** and this cause is **REMANDED** to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that appellant FERNANDO HERRERA recover his costs of this appeal from appellee DALLAS INDEPENDENT SCHOOL DISTRICT.

Judgment entered this 27th day of August, 2020.